# United States Court of Appeals
## For the First Circuit

No. 04-2719

ISEUT G. VÉLEZ-RIVERA; FERNANDO PEÑA-CASTRO,

Plaintiffs, Appellants,

v.

HON. JUAN AGOSTO-ALICEA, in his personal capacity and in his official capacity as President of the Government Development Bank; GOVERNMENT DEVELOPMENT BANK OF PUERTO RICO; ALBA CABALLERO-FUENTES; LILLIAM JIMÉNEZ-MONTIJO,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Torruella, Circuit Judge,
Cyr and Stahl, Senior Circuit Judges.

Francisco R. González-Colón, with whom F.R. González Law Office was on brief, for appellants.
Carlos A. Del Valle-Cruz, with whom Esther Crespin-Credi, Attorneys of the Puerto Rico Department of Justice, were on brief, for appellee Alba Caballero-Fuentes.
Ineabelle Santiago-Camacho, with whom Rafael Escalera-Rodríguez, Michelle Taveira-Tirado, and Reichard & Escalera, were on brief, for appellee Hon. Juan Agosto-Alicea, in his personal capacity.
Edwin J. Seda-Fernández, with whom Patricia R. Limeres-Vargas and Adsuar Muñiz Goyco & Besosa, P.S.C., were on brief, for appellees Government Development Bank of Puerto Rico and Hon. Juan Agosto-Alicea, in his official capacity.

Irene S. Soroeta-Kodesh, Assistant Solicitor General, with whom Salvador J. Antonetti-Stutts, Solicitor General, Mariana D. Negrón-Vargas, Deputy Solicitor General, and Maite D. Oronoz-Rodríguez, Deputy Solicitor General, were on brief, for appellee Lilliam Jiménez-Montijo.

February 10, 2006

**TORRUELLA**, **Circuit Judge**. Plaintiffs Iseut G. Vélez-Rivera ("Vélez") and Fernando Peña-Castro ("Peña") brought action under 42 U.S.C. § 1983 for injunctive relief and compensatory and punitive damages against defendants Juan Agosto-Alicea ("Agosto") in his official and personal capacities, Alba Caballero-Fuentes ("Caballero"), Lilliam Jiménez-Montijo ("Jiménez"), and the Government Development Bank of Puerto Rico ("GDB").[1] Plaintiffs allege that their employment with GDB was unlawfully terminated as a result of their political affiliation with the New Progressive Party ("NPP"), in violation of their First and Fourteenth Amendment rights.

On February 19, 2004, the magistrate judge issued a Report and Recommendation denying defendants' motion for summary judgment. On August 24, 2005, the district court dismissed all of plaintiffs' federal claims with prejudice and granted summary judgment. Plaintiffs then filed a motion for reconsideration which the district court denied on June 9, 2005. Plaintiffs now appeal.

Because we find that the district court properly granted summary judgment against both Vélez and Peña, we affirm.

---

[1] Plaintiff Vélez brought suit against all defendants, but Plaintiff Peña only brought suit against GDB and Agosto. The district judge dismissed all claims against GDB and against Agosto in his official capacity on Eleventh Amendment grounds. Plaintiffs have not raised this issue on appeal and so we consider it to be waived. Sullivan v. Neiman Marcus Group, Inc., 358 F.3d 110, 114 n.1 (1st Cir. 2004).

In the general elections of November 2000, the incumbent NPP was defeated by the Popular Democratic Party ("PDP"). As part of the transition to the new administration, Agosto was appointed president of GDB on January 2, 2001. Upon taking office, Agosto hired defendant Caballero, an independent contractor in the field of human resources, to investigate all employment actions executed at GDB between July 1, 2000 and December 31, 2000 to assess their legality.[2] Vélez-Rivera v. Agosto-Alicea, 334 F. Supp. 2d 72, 90-91 (D.P.R. 2004).

On September 7, 2000 -- one day before the commencement of the moratorium period -- plaintiff Vélez had been promoted to Deputy Director of Human Resources at GDB, subject to a six-month probationary period that was scheduled to expire on March 6, 2001. Id. at 83. Although Vélez maintains that her performance was at all times satisfactory, she received notice on February 15, 2001 that her probation period had been extended for three additional months so that her qualifications could be reviewed. Id. Vélez claims that at one point defendant Jiménez, GDB's Human Resources

---

[2] As we have noted previously, "[u]nder Puerto Rico law, there is a period of time, called the electoral moratorium period ("veda electoral"), during which no 'movement[s] of personnel' are to take place absent emergencies." Sánchez-López v. Fuentes-Pujols, 375 F.3d 121, 126 (1st Cir. 2004) (citing 3 P.R. Laws Ann. § 1337). The moratorium period extends from two months prior to the election to two months afterward. In 2000, the moratorium began on September 8.

-4-

and Labor Relations Director, warned her that "she would soon be dismissed because she was a New Progressive Party Member." On June 15, 2001, Jiménez presided over an informal hearing in which it was determined that Vélez did not comply with the minimum requirements of her position at the time of her promotion. Vélez-Rivera, 334 F. Supp. 2d at 91. On July 12, 2001, Agosto sent a letter to Vélez informing her that her appointment was null and void and terminating her employment. Id. at 83.

Vélez insists that she was terminated because of unlawful political discrimination. Defendants claim -- and the district court agreed -- that Vélez did not meet the requirements for the position of Deputy Director of Human Resources in September 2000 and thus that her termination was appropriate because her promotion violated GDB personnel regulations and the "merit principle."[3]

---

[3] The electoral moratorium was implemented "[f]or the purpose of guaranteeing the faithful application of the merit principle in public service during the period before and after elections" 3 P.R. Laws Ann. § 1337.

The "merit principle" is the requirement under Puerto Rico law that
> [t]he agencies of the personnel system are bound to offer the opportunity to compete to any qualified person interested in participating in public service in our country. This participation shall be established on the candidate's merit without discrimination on account of race, color, sex, place of birth, age, origin or social condition, physical or mental disability, or political or religious beliefs.

3 P.R. Laws Ann. § 1333.

On February 4, 1999, plaintiff Peña signed a contract with GDB for services including "consulting in the sale of equity and debts of hotels, specifically, Mr. Peña [would] contribute his experience and education in areas such as valuation, negotiation and legal structuring of different transactions" Vélez-Rivera, 334 F. Supp. 2d at 86. On September 7, 1999, Peña signed another service order expanding the scope of his services to "consulting in the area of privatization." Id. He signed similar service orders in December 1999 and July 2000, none of which were limited by expiration dates. Id. On November 21, 2000, Peña signed a final service order that was to replace all previous orders and that specified an effectiveness period of November 1, 2000 to June 30, 2001. Id. On February 9, 2001, Peña was informed of the premature cancellation of his service order. Id.

Peña alleges that his contract was terminated because of political discrimination. His four previous service orders had been renewed without complaint, and Peña claims that he was given no explanation when he was fired and "replaced with two PDP members who now perform the same services that he performed while employed with the GDB." Brief for Appellants at 10. He also claims that GDB's executive vice president stated publicly that "all service orders with NPP members would be cancelled." Id. at 11. Defendants maintain that Peña's contract was not terminated because

of political discrimination, and that, as a contract employee, he had no legitimate expectation of continued employment with GDB.

## II.

We review a grant of summary judgment de novo, drawing all reasonable inferences in favor of the non-moving party. Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 42 (1st Cir. 2002). Summary judgment is properly granted if the movant can demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In the summary judgment context, we have construed "genuine" to mean "that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party" United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992). Similarly, a fact is "material" if it is "one that might affect the outcome of the suit under the governing law." Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994) (internal citation and quotation marks omitted).

## A.

The first issue before us is whether, as plaintiffs contend, the district court applied the wrong pleading standard when it granted defendants' motion for summary judgment. This claim is meritless. Plaintiffs rely on our opinion in Gorski v. New Hampshire Dep't of Corrections, 290 F.3d 466, 473 (1st Cir.

2002), to remind us that "complaints alleging employment discrimination need only satisfy 'the simple requirements of Rule 8(a).'"[4] Id. (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)). Although they have correctly stated the applicable law, plaintiffs have completely misapplied the principle to the facts of their case. Swierkiewicz specifically invalidated the requirement, formerly recognized in some circuits including this one,[5] that plaintiffs plead facts establishing a prima facie case in order to survive a motion to dismiss. Swierkiewicz, 534 U.S. at 511. Instead, Swierkiewicz requires only a short and plain statement to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (internal citation and quotation marks omitted). Id. at 512.

Plaintiffs allege that the district court applied the heightened pleading standard in two separate instances. First, when it granted summary judgment for Agosto because Peña had failed to allege any material fact showing "deliberate indifference," an element of "supervisory liability." Brief for Appellants at 21. Second, when the district court found that Agosto was protected

----

[4] Rule 8(a) requires only that a pleading should entail "a short and plain statement of the claim showing that the pleader is entitled to relief". Fed. R. Civ. P. 8(a).

[5] Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 15 (1st Cir. 1989).

under the doctrine of qualified immunity because his actions with regard to Vélez were "objectively reasonable."

We see no evidence that the heightened pleading standard was applied. Under the overruled standard, the district court would have required heightened specificity at the pleading stage, which did not occur in this case. By contrast, the district court correctly applied the appropriate standard of review to defendants' summary judgment motion when it found no genuine issue as to any material fact. The court's analysis of supervisory liability and qualified immunity relied upon the appropriate standards because, although specificity is not required at the pleading stage, it is required at the summary judgment stage. Swierkiewicz specifically distinguished the two doctrines, explaining that "[t]his simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz, 534 U.S. at 512. In other words, notice pleading is sufficient for a claim to survive a motion to dismiss, but plaintiffs bear a heavier burden at the summary judgment stage.

**B.**

The second issue before us is whether there is a genuine issue of material fact as to defendants' liability under 42 U.S.C. § 1983 that would make a grant of summary judgment inappropriate in this case.

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, alleging unlawful political discrimination resulting in loss of employment, in violation of their First and Fourteenth Amendment rights.  In order to establish liability under § 1983, plaintiffs "must show by a preponderance of the evidence that: (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States."  Johnson v. Mahoney, 424 F.3d 83, 89 (1st Cir. 2005).

## Political Discrimination

Both plaintiffs allege political discrimination in violation of their First Amendment rights.  It is axiomatic that "the First Amendment protects 'non-policymaking' public employees from adverse employment actions based on their political affiliation or opinion."  González-Piña v. Rodríguez, 407 F.3d 425, 431 (1st Cir. 2005).  Under Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977), allegations of political discrimination in employment are judged according to a burden-shifting regime.  Plaintiffs bear the initial burden to show that "political discrimination was the substantial or motivating factor in a defendant's employment decision."  Cepero-Rivera v. Fagundo, 414 F.3d 124, 132 (1st Cir. 2005) (internal citation and quotation marks omitted).  Defendants then must demonstrate that (i) they would have taken the same action in any event; and (ii) they would

-10-

have taken such action for reasons that are not unconstitutional. See Mt. Healthy, 429 U.S. at 286-87.

Vélez asserts that defendants were "well aware" of her affiliation with NPP. Vélez-Rivera, 334 F. Supp. 2d at 83. She maintains that she was qualified for her promotion, that her performance as Deputy Director of Human Resources was at all times "exemplary," and that she was never given a satisfactory explanation for the prolongation of her probation. Id. She claims further that defendant Jiménez warned her that she would be dismissed because of her NPP affiliation. Id. at 91. However, she acknowledged in her deposition that she never mentioned her political beliefs to anyone at GDB, and that she did not know how anyone at GDB had become aware of them. Nevertheless, she inferred such knowledge because of a general feeling that she was treated "differently" by co-workers. Id. at 84. She also admitted that she had no knowledge of any organization of pro-NPP GDB employees. Id.

Drawing all inferences for Vélez, we do not find the facts to weigh heavily in her favor. Nevertheless, we assume, arguendo, that she has made a prima facie case for political discrimination in order to consider defendants' explanation for her termination within the Mt. Healthy framework.

Defendants maintain that they would have reached the same decision to terminate Vélez absent any political discrimination

-11-

because she was unqualified for her promotion. The formal job announcement for Deputy Director of Human Resources, posted August 9, 2000, required that applicants possess a masters degree and at least five years' experience in human resources administration, two of which must have been supervisory, and one of which must have pertained to "personnel transactions." Vélez-Rivera, 334 F. Supp. 2d at 84. Vélez maintains that she was judged qualified for her promotion by the GDB's Classification and Compensation Specialist in 2000. Id. at 89. However, after careful examination of her employment history, the district court found that Vélez did not meet the minimum requirements. Vélez's employment history reflects that the majority of her work experience was in the field of labor relations, not human resources. Vélez does not dispute defendants' claim that the two fields are categorically different and entail different activities. At the time of her promotion, her relevant qualifications for her promotion included only the following: one year, five months, and 27 days as a human resources administrator at the Puerto Rican Association for the Well-Being of the Family; and an additional eight months in the field of human resources as Director of Administration at the Office of the Governor, where she served in a supervisory capacity. Id. at 84-85. The district judge found, and Vélez does not dispute, that she had no other experience relevant to the formal requirements of the position of Deputy

-12-

Director of Human Resources at GDB. By our calculations, her years spent in the field of human resources amount to less than half of what was required by the formal job announcement for her position.

After defendants have put forth a nondiscriminatory justification for the challenged action, "the plaintiff[s] may discredit the proffered nondiscriminatory reason, either circumstantially or directly". Padilla-García v. José Guillermo Rodríguez, 212 F.3d 69, 77 (1st Cir. 2000). Accordingly, Vélez alleges that the district court failed to address "the facts that discredit the defendants' proffered nondiscriminatory reason" for terminating her. From her perspective, those facts include the statement by defendant Jiménez to Vélez that she would "soon be dismissed because she was an NPP member" and the GDB Classification and Compensation Specialist's classification of Vélez as "qualified" at the time of her promotion. Only the first of these warrants discussion. Despite the fact that Jiménez presided over Vélez's informal hearing, she was not the decisionmaker with regard to Vélez's employment. Jiménez's employment at GDB began five days after Vélez was first notified of her impending dismissal, and regardless of any comments she might have made, the district court found no evidence that Jiménez exercised any influence whatsoever over Vélez's dismissal. Vélez-Rivera, 334 F. Supp. 2d at 91-92.

The second prong of a successful Mt. Healthy defense requires an additional showing -- that defendants "would have

-13-

reached the same decision" as to her termination even "in the absence of the protected conduct." Mt. Healthy, 429 U.S. at 287.

In Sánchez-López, we held that even if an employment action was illegal, the second prong of Mt. Healthy was only satisfied "[i]f defendants demonstrated that they in fact have a practice of taking corrective action against all employees [whose appointments violate Puerto Rico law] or could otherwise show that they would have taken the corrective action anyway." 375 F.3d at 131.

However, recently in Cepero-Rivera, we found both prongs of the Mt. Healthy defense to be satisfied where an employee of the Puerto Rican Highway Authority (PRHA) alleged political discrimination and defendants offered the legitimate nondiscriminatory explanation that the employee had violated certain PRHA regulations. 414 F.3d at 132-33. It was clear that defendants would have reached the same decision in the absence of discrimination because under the circumstances, "it is difficult to see how a supervisor . . . could have done anything less" than order an investigation leading to his termination. Id. at 133.

Similarly, in Texas v. Lesage, 528 U.S. 18 (1999), the Supreme Court held that defendants were entitled to summary judgment where a student alleged a discriminatory basis for the denial of his admission to a graduate program and defendants put forth a defense, under Mt. Healthy, that his grades, test scores,

-14-

and recommendations were not as strong as those of successful applicants. Id. at 19. Sánchez-López distinguishes Lesage because there, "it was undisputed that the plaintiff did not otherwise meet the admission criteria." Sánchez-López, 375 F.3d at 132.

The facts in this case are similarly clear-cut, placing Vélez squarely in Lesage and Cepero-Rivera territory. It is undisputed that Vélez was dramatically underqualified for her promotion. It is undisputed that Caballero was hired to assess the legality of all personnel transactions that occurred between July 1 and December 31, 2000. Plaintiffs characterize this audit as "selective" because they claim that each of the relevant employment actions involved NPP members, but this allegation is entirely unsupported and it is, in any event, of no moment. Even if all of the personnel actions during the relevant period involved NPP members, official review of such employment decisions does not support a claim of discrimination. As we have observed,

> [i]f uniformly applied personnel practices, predicated on legitimate reasons, result in terminations, those terminations are not unconstitutional because those affiliated with one political party are disproportionately impacted. It is in the nature of a change in administrations that job actions by the new party in power will have a disparate impact on members of the outgoing party.

Id. at 140. We conclude that defendants have discharged their burden under the second prong of Mt. Healthy by demonstrating that

-15-

they would have reached the same conclusion with regard to her employment in the absence of discrimination.

Defendants have mounted a successful Mt. Healthy defense with regard to Vélez and we affirm the district court's grant of summary judgment with regard to her First Amendment claim.

Plaintiff Peña also alleges politically-motivated employment termination in violation of his First Amendment rights. Specifically, he claims that his employment service contract was prematurely terminated because of his political affiliation with the NPP. Peña claims that defendants knew of his political affiliation in part because he was the leader of an association of NPP-affiliated GDB employees. Vélez-Rivera, 334 F. Supp. 2d at 86. He claims that he was given no explanation for the cancellation of his contract and that such cancellation was arbitrary because his service orders had been renewed four times previously. Id. He also alleges that GDB Executive Vice President José V. Pagán publicly and privately stated that all service order contracts with NPP members would be cancelled. Id. Finally, he claims that subsequent to his termination, he was "replaced" by two PDP members who now perform substantially the same tasks that he performed while employed by the GDB. Brief for Appellants at 10.

The district court found, and Peña does not disagree, that several of Peña's allegations are unsubstantiated by the evidence on record. Peña stated in his deposition that he never

directly heard Pagán say anything about cancelling contracts with NPP members, but rather he admits that he "heard a 'rumor' from his supervisor, who supposedly heard it from someone else." Id. Similarly, although Peña claims to have been a leader of NPP members at GDB, his deposition reflects that he does not know which employees are members or what the group's activities might be. Id. Finally, Peña has provided no support for his allegation that two PDP-affiliated individuals replaced him at GDB.

In our review of a grant of summary judgment, "we do not consider conclusory allegations, improbable inferences, and unsupported speculation." Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25, 426 F.3d 416, 419 (1st Cir. 2005) (internal citation and quotation marks omitted). Peña has failed to challenge the district court's analysis and characterization of the evidence regarding his allegations of political discrimination, and he has not demonstrated that political discrimination was a substantial or motivating factor in his premature contract termination. We do not find his allegations to be persuasive, and thus we affirm the district court's grant of summary judgment with regard to Peña's First Amendment claim.

## Due Process

Both plaintiffs also allege the deprivation of their property interests in violation of their Fourteenth Amendment rights to the due process of law. The threshold question we must

-17-

first address is whether each had a property interest in their employment. We have held that while the process "due" a government employee is determined by federal law, the preliminary inquiry as to the existence of a property interest is determined by state or commonwealth law. Rivera-Flores v. Puerto Rico Tel. Co., 64 F.3d 742, 750 (1st Cir. 1995). To determine whether an employment interest is a property interest in Puerto Rico, we normally first ask whether the position in question is a "trust position"[6] or a "career position." Career positions are considered permanent and thus "career employees have a property interest in their continued employment." González-De-Blasini v. Family Dept., 377 F.3d 81, 86 (1st Cir. 2004). By contrast, Puerto Rico law establishes that trust employees "shall be of free selection and removal," i.e., removable with or without cause. 3 P.R. Laws Ann. § 1350; see also Laureano-Agosto v. García-Caraballo, 731 F.2d 101, 103 (1st Cir. 1984).

Defendants do not suggest that Vélez was a trust employee. Rather, they contend -- and the district court agreed -- that because she was promoted in violation of GDB personnel policies, she had no reasonable expectation of continued employment. We have previously held that "under Puerto Rico law any property right associated with a career position is rendered

---

[6]    "Trust positions" are sometimes also called "confidential positions."

null and void if a violation of the Personnel Act attends the filling of such a position." Kauffman v. Puerto Rico Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988). The district judge found that GDB employment regulations are subject to the Puerto Rico Personnel Act, and that therefore a violation of GDB personnel policies constitutes a violation of the Puerto Rico Personnel Act. Vélez-Rivera, 334 F. Supp. 2d at 89. Vélez does not challenge this finding, and we affirm the district court's grant of summary judgment as to her Fourteenth Amendment claim.

Peña also alleges a violation of his Fourteenth Amendment right to due process. The parties do not dispute that his contract was terminated prematurely. However, we have long distinguished between garden-variety contract breach and those property deprivations that rise to the Constitutional level. Redondo-Borges v. U.S. Dept. of Hous. and Urban Dev., 421 F.3d 1, 10 (1st Cir. 2005); Jiménez v. Almodóvar, 650 F.2d 363, 370 (1st Cir. 1981) ("mere breach of contractual right is not a deprivation of property without constitutional due process of law . . . . Otherwise, virtually every controversy involving an alleged breach of contract by a government or a governmental institution or agency or instrumentality would be a constitutional case.") (internal citation and quotation marks omitted).

The district court held that because Peña has not made a colorable claim for political discrimination, the termination of

his contract was a garden-variety contract breach "for which Puerto Rico law provides a sufficient and adequate remedy." Vélez-Rivera, 334 F. Supp. 2d at 89. We disagree with the district court's analysis on this point, but we are in agreement as to the result.

There can be no doubt that "[u]nder the Fourteenth Amendment, a state is prohibited from discharging a public employee who possesses a property interest in continued employment without due process of law." Santana v. Calderón, 342 F.3d 18, 23 (1st Cir. 2003). We have held that a contractual agreement can give rise to a property interest. Id. at 24 ("A legitimate expectation of continued employment may derive from a statute, a contract provision, or an officially sanctioned rule of the workplace."). Thus, the relevant question is whether Peña's contract did in fact create such a protected interest.

Peña's fixed term contract was set to expire on June 20, 2001. He received notice of termination on February 9, 2001. At that time he was contractually entitled to more than five additional months of employment. In Perry v. Sindermann, 408 U.S. 593 (1972), the Supreme Court held that an interest in a benefit is a property interest "if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit." Id. at 601. At least one of our sister circuits has found a legitimate interest in continued employment where a contract provides for a fixed term of employment services. See San

Bernardino Physicians' Servs. Med. Group, Inc. v. County of San Bernardino, 825 F.2d 1404, 1408 (9th Cir. 1987). Property interests are not created by the Constitution, but rather "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). We need not reach this issue, because even if Peña did have a property interest in his employment for the remaining five months on his contract, his claim fails as to the second requirement for a prima facie case under § 1983 -- that his rights were violated by state officials acting under color of state law. Camilo-Robles v. Zapata, 175 F.3d 41, 43 (1st Cir. 1999).

It is well-established that "only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable." Cepero-Rivera, 414 F.3d at 129. Peña claims that Agosto canceled his contract. However, in his deposition, Peña admitted that the letter terminating his contract was not signed by Agosto. The letter was in fact signed by Amaury Díaz, Finance Director of GDB. Peña has not alleged any facts to substantiate his claim that Agosto was directly involved with his contract termination. Thus, Agosto could only be liable to Peña under a theory of supervisory liability. In § 1983 cases, "supervisors are not automatically liable for the misconduct of those under their command. A plaintiff must show an affirmative

link between the subordinate officer and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000) (internal citation and quotation marks omitted). In this case, Peña has failed to allege any link between Agosto and whoever canceled his contract, whether Díaz or another, unnamed individual.

Accordingly, we affirm the district court's grant of summary judgment as to Peña's claim under the Fourteenth Amendment.

### III.

For the foregoing reasons, we affirm the district court's grant of summary judgment as to all claims brought under § 1983 by both Vélez and Peña.

**Affirmed**.