Jose TORRES–HEREDIA,
et al., Plaintiffs

v.

Nicolas LOPEZ–PEÑA,
et al., Defendants.

Civil No. 02–1466 (GAG/CVR).

United States District Court,
D. Puerto Rico.

June 3, 2008.

Francisco R. Gonzalez–Colon, Esq., Francisco J. Gonzalez–Magaz, Esq., for Plaintiffs or Petitioner.

Carlos Del Valle–Cruz, Esq., Isabel Maria Rodriguez–Casellas, Esq., Marta Irene Feliciano–Montilla, Esq., Yadhira Ramirez–Toro, Esq., Juan M. Rivera–Gonzalez, Esq., Luis V. Villares–Sarmiento, Esq., for Defendants or Respondent.

## OPINION AND ORDER

CAMILLE L. VELEZ–RIVE, United States Magistrate Judge.

### INTRODUCTION

On May 22, 2008, defendants Peter Serrano Ortiz ("Serrano") and Luis Villahermosa ("Villahermosa") filed a Motion to Dismiss (**Docket No. 300**) as their recently appointed legal representative had requested in the pretrial conference held before this Magistrate Judge, without plaintiff's objection. See Minutes of May 5, 2008 (**Docket No. 298**). Plaintiffs filed their Opposition to Defendants' Motion to Dismiss (**Docket No. 301**).

Defendants Serrano and Villahermosa, the two remaining defendants in this action, now submit three grounds for dismissal of the surviving claims of the only two remaining plaintiffs to this action, José Torres Heredia and Jesús Muñiz Cruz (hereinafter "plaintiffs"). First, that the remaining plaintiffs' First Amendment violations due to alleged political discrimination may not prosper because summary judgment was granted as to the nominating authority, Nicolás López Peña, in this action. Since neither defendants Serrano nor Villahermosa were the nominating authority, their isolated actions against plaintiffs should not amount to a constitutional violation and, thus, the removals of plaintiffs from their respective acting positions lack a causal connection to the discrimination claims.

Secondly, defendants submit non-mutual collateral estoppel should preclude plaintiffs' claims because, although they were not a party to a prior state court decision, these plaintiffs fall on equal footing and within the legal holding regarding electoral ban and appointments of State Insurance Fund ("SIF") employees without complying with the merit principle. Even dispensing with mutuality requirements, defendants state this Court should resolve this controversy against plaintiffs and preclude their federal claim.

Thirdly, defendants submit that, even if plaintiffs can establish a case of political discrimination, they would still not be entitled to their positions under a *Mt. Healthy/Lesage* standard. We shall briefly discuss.

## MOTION TO DISMISS STANDARD OF REVIEW

A party may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Still, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see Miranda v. Ponce Fed. Bank,* 948 F.2d 41 (1st Cir.1991).

The Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). A complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Romero–Barceló v. Hernández–Agosto,* 75 F.3d 23, 28 n. 2 (1st Cir.1996) (*quoting Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988)). The Court, need not accept a complaint's " 'bald assertions' or legal conclusions"

when assessing a motion to dismiss. *Abbott, III v. United States*, 144 F.3d 1, 2 (1st Cir.1998) (*citing Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1216 (1st Cir.1996)).

## LEGAL ANALYSIS

### A. Isolated actions by defendants Serrano and Villahermosa.

Defendants Serrano and Villahermosa once more submit that no *prima facie* discrimination may be established by plaintiffs since these defendants were not the nominating authority and any isolated actions by them should not be labeled as constitutional violations.

This issue, and with significant more trimmings, was already discussed in this Magistrate Judge's Opinion and Orders regarding judgment on the pleadings and for summary judgment of February 9, 2007 and February 25, 2008 (**Docket Nos. 221, 281**).

This Court already dismissed several other plaintiffs, also employees at the SIF, as well as various allegations by all plaintiffs as to the nominating authority, Nicolás López Peña. Of the forty-one (41) original plaintiffs only the claims of these two plaintiffs, Torres Heredia and Muñiz Cruz, survived as to only two (2) out of the twelve original defendants. As defendants well claim, this case has been recently pared down to its essential bones.

Plaintiffs' Opposition makes reference to several instances of political discrimination acts which were included in their pretrial memorandum, as well as in their opposition to these two defendants, and the original defendants' in previous motion for summary judgment already elucidated. Succinctly, defendant Serrano gave instructions to reduce plaintiff Muñiz Cruz' score evaluation by the immediate supervisor, contrary to evaluation procedures. Defendant Villahermosa had ordered a list

of NPP employees at the SIF which was referred to as the "black list", as well as a list of those NPP employees who gave money to his political party, with instructions to take their money but not to help them out. Plaintiff Torres Heredia was substituted in his position by a well known member of the opposing party, upon recommendation by co-defendant Serrano. This summary, besides the highly politically charged atmosphere in the SIF, formerly allowed survival of the claims of plaintiff Torres Heredia and Muñiz Cruz as to co-defendants Serrano and Villahermosa at summary judgment level, which in essence had significant more legal discussion and more merits that the claims now raised in the instant Motion to Dismiss. These defendants, Serrano and Villahermosa, are now attempting to obtain dismissal on lesser grounds than formerly discussed.

However, the argument that claims as to the nominating authority Nicolás López Peña were dismissed, does not equate to plaintiffs Torres Heredia and Muñiz Cruz not establishing a *prima facie* case as to actions by co-defendants Serrano and Villahermosa. It was already ruled that there are genuine issues of material fact in controversy as to the political discriminatory animus which affected remaining plaintiffs' conditions of employment and are to be evaluated by a trier of facts. It seems defendants Serrano and Villahermosa consider they are not persons acting under color of law which deprived plaintiffs of a First Amendment right in the absence of the Head of the Agency, Nicolás López Peña, and thus there is no actionable constitutional claim left.

However, defendant Serrano and Villahermosa were not merely co-workers of plaintiffs whose action may not amount to state actors. Serrano was the Executive Director and Villahermosa was the Chief of Personnel. The previous Opinion of this

Court already discussed their capacities and their actions as to plaintiffs Torres Heredia and Muñiz Cruz and no further discussion is required to deem there is a *prima facie* case of First Amendment violation as to the two remaining co-defendants.[1]

**B. Non–Mutual Collateral Estoppel.**

Defendants also submit plaintiffs would not be entitled to their acting positions since they were appointed after August 1, 2000, and a state decision to which they were not party, under principles of federalism and collateral estoppel, would render their restitutions unlawful for which unlawful appointments breed no lawful claims.

Defendants acknowledge that issue preclusion usually requires identity of parties in both the previous and current litigation and further acknowledge plaintiffs Torres Heredia and Muñiz Cruz were not parties to the former state litigation they seek to apply collateral estoppel. Thus, defendants aim at mutuality and judicial economy to dispense plaintiffs' entitlement to their constitutional claim at federal level through non-mutual collateral estoppel to be applied.

The state law case which defendants make reference became final when the Supreme Court of the Commonwealth of Puerto Rico denied a petition for *certiorari* which resulted in the Appeals Court having affirmed the determination in *Unión de Empleados de la Corporación del Fondo del Seguro del Estado v. Corporación del Fondo del Seguro del Estado*[2] wherein the appointments of employees of the SIF were considered not to fall under the merit principle even when these were appointed under agreement between the Union and the employer, SIF.

**1. Non–Mutuality Collateral Estoppel.**

Defendants argue the Supreme Court has expressly adopted the doctrine of nonmutual collateral estoppel, called offensive when invoked by the plaintiff, and labeled defensive when invoked by a defendant. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329–330, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *see also NLRB v. Donna–Lee Sportswear Co.,* 836 F.2d 31, 37 (n. 7) (1st Cir.1987) ("Defensive issue preclusion refers to the situation where a defendant, who prevailed on a particular issue in the initial action, seeks to prevent relitigation of that issue in a later action."). The Supreme Court has held that the "application of non-mutual estoppel promote[s] judicial economy and conserve[s] private resources without unfairness to the litigant against whom estoppel was invoked." *See Standefer v. United States,* 447 U.S. 10, 21, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980); *Acevedo–García v. Monroig,* 351 F.3d 547, 573–575 (1st Cir.2003); *Parklane Hosiery Co. v. Shore,* 439 U.S. at 322, 99 S.Ct. 645 (explaining the intricacies of the offensive use of non-mutual collateral estoppel).

In dispensing with the mutuality requirement, the Supreme Court has reasoned that permitting repeated litigation of the same issue as long as the supply of unrelated defendants [in this case, unrelated plaintiffs] reflects either the aura of the gaming table or a lack of discipline and of

---

**1.** The Opinion and Order issued on February 25, 2008, 2008 WL 7758990 (Docket No. 281) is referred and made part of this opinion.

**2.** The use and custom and/or agreement or stipulation between the Union and the employer SIF were examined by state courts in cases, CC–2002–226 and KLAN 2001–01203, as well as discussed *de brevis* in this Magistrate Judge's Opinion and Order regarding summary disposition of due process claims, not insofar as First Amendment.

disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure. *Blonder–Tongue Laboratories, Inc. v. University of Ill. Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Here, the lack of mutuality between the parties to the Puerto Rico court case and the instant case is attributable solely to instant plaintiffs' status as non-unionized employees. The legal controversy is discussed, however, to evolve around the adjudication on facts in common with both set of litigants: whether they were appointed during the electoral ban. The issue of whether appointments made during the electoral ban are lawful or not is essentially a legal controversy that both the Union and the SIF had a high interest in advocating with conviction and thoroughness. The result reaffirms prior judicial decisions holding that appointments made contrary to law do no engender lawful rights. In sum, defendants state there is no likelihood that the federal plaintiffs in the instant case can conceivably enjoy the benefit of a more beneficial adjudication as a matter of law, and no reason why the appearing defendants should have to face the prospect of having to go through the same process once again solely because the plaintiffs in this case were not in the original litigation. Because fairness and judicial economy are commingled, defendants submit, the doctrine of non-mutual estoppel calls for the application of the Commonwealth's holding in the case at bar.

The record shows plaintiff Muñiz Cruz began working at the SIF back in 1992 as a maintenance employee and since July 2000 held a regular managerial post as Administrative Officer. The acting position he was authorized to occupy was held from September 2000 to March 31, 2001. Defendant Serrano communicated to Muñiz on April 10, 2001, the decision of cancelling his position. Muñiz Cruz returned to his regular career position in the Medical Appointments Section. Defendant Villahermosa, as Chief of Personnel, signed the termination of plaintiff Muñiz Cruz' acting position.[3]

Plaintiff Torres Heredia held a regular position as an office clerk in the Division of Medical Control of the SIF since 1996 and is a union member. He was offered in July of 1999 a temporary managerial post as Investment Supervisor of the Claims Division in the Bayamón Region, which he held until September 2000, when allegedly the position was to be eliminated. It was thereafter assigned to a PDP activist. Torres Heredia was then transferred to another temporary supervisory position at the Division of the Per Diem Information until January 31, 2001, when he was returned to his regular job position. Serrano allegedly kicked Torres Heredia's door supposedly looking for some records which were not kept at the office. A security guard has also been placed in his office door to watch movements as an NPP affiliate.[4]

---

3. It is also claimed, among others, Serrano indicated to Muñiz Cruz he had moved his office without authorization and once escorted him out of the office. Serrano had requested monthly reports from Muñiz Cruz and then questioned its findings, as well as a medical disability determination, refused to sign a merit increase recommended by the immediate supervisor and indicated being in disagreement with Muñiz Cruz' evaluation. As to defendant Villahermosa, at meetings in the PDP's Central Committee, he gave instructions to identify opposing political party NPP employees and made a list, referred to as the black list, as well as to take money from them, as contributions, but not to help them.

4. Torres Heredia has also claimed other persons were appointed and selected to temporary positions he had applied because of political considerations and his removal from an interim position was but a pretext to appoint a PDP affiliate to same position. The replace-

■ Although it may be considered that if plaintiffs herein prevail on the merits of their claim, they may not be reinstated to positions that no longer exist or those declared null and void by final and unappealable state court's judgments, the indemnity allowed, if politically motivated employment decisions are established, as well as their First Amendment violations, is an ample one, both insofar as jury verdict on damages, and as well as for equitable relief thereafter requested. As such, the non-existence of the interim positions would not preclude plaintiffs from submitting their claims before the jury and, thereafter, before the court as to any equitable relief.

## 2. Federalism and Rooker/Feldman.[5]

Secondly, defendants also submit principles of estoppel, as well as, federalism should be called upon to have this federal court assume the Commonwealth's decree. Defendants state that to ask this Court to adjudicate the legality of the appointments issue from scratch, irrespective of the final judgment entered by the Commonwealth courts, would in essence require federal review of a final state court judgment. On such grounds, defendants promote that the *Rooker/Feldman* doctrine precludes this Honorable Court from exercising its jurisdiction towards those ends. *See Lance v. Coffman,* 549 U.S. 437, 127 S.Ct. 1194, 1197, 167 L.Ed.2d 29 (2007) (holding that

"Rooker–Feldman concerns a district court's subject-matter jurisdiction").

The *Rooker–Feldman* doctrine takes its name from two Supreme Court cases; one *Rooker v. Fidelity Trust Co.,* the other six decades later, *District of Columbia Court of Appeals v. Feldman.* In *Rooker,* 263 U.S. at 416, 44 S.Ct. 149, the Supreme Court affirmed the district court's conclusion that jurisdiction was lacking, stating that: "[u]nder the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment of a state court for errors of that character."

In turn, *Feldman* reaffirmed the *Rooker* holding that only the Supreme Court has jurisdiction to review decisions of state courts; therefore, district courts have no jurisdiction to entertain challenges to state-court decisions, even if the challenges alleged are constitutional in nature. *Feldman,* 460 U.S. at 476, 103 S.Ct. 1303. The effect of the *Rooker–Feldman* doctrine is to provide an independent basis for prohibiting collateral attack on state court judgments. *Rooker,* 263 U.S. at 415–416, 44 S.Ct. 149; *Feldman,* 460 U.S. at 476, 103 S.Ct. 1303; *Badillo–Santiago v. Naveira–Merly,* 378 F.3d 1, 6 (1st Cir.2004); *Wilson v. Shumway,* 264 F.3d 120, 125 (1st Cir. 2001); *Hill v. Town of Conway,* 193 F.3d 33, 34–35 (1st Cir.1999).[6]

ment was thereafter promoted to a supervisory position, although plaintiff Torres Heredia held similar or equal qualifications and had no work performance issues pending, contrary to the person who was appointed.

**5.** *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

**6.** See *Giles Toro v. University of Puerto Rico,* 183 F.Supp.2d 457, 461–462 (D.Puerto Rico

2001) (father's federal claims that his due process rights were violated by testing laboratory and director of another lab in connection with submission of allegedly erroneous DNA test results in paternity and child filiation suit brought before the Superior Court of Puerto Rico was barred by *Rooker–Feldman* doctrine; Commonwealth court decision ruling test results admissible was from the highest state court when Puerto Rico Supreme Court entered a final judgment by denying the *writ of certiorari,* and the actions which father claimed deprived him of his due process were the same actions that resulted in the introduc-

■ *Rooker–Feldman* applies to state or territorial court judgments to which the federal courts would accord preclusive effect, *Cruz v. Melecio,* 204 F.3d 14, 21 n. 5 (1st Cir.2000), and the federal courts "can ascribe no greater preclusive force to a state court judgment than would the courts of that state," *Id.* at 21; *Badillo–Santiago,* 378 F.3d at 6.

■ In order to apply the constraints of the *Rooker–Feldman* doctrine a judgment must have been final and from the highest court. *U.S. Industries v. Laborde,* 794 F.Supp. 454, 462 (D.Puerto Rico 1992). First, as applied in *Feldman,* the doctrine is based on 28 U.S.C. § 1257, which limits review of final judgments on the merits of the highest state court of a State to the Supreme Court. *Id.* Review of final judgments of the Supreme Court of Puerto Rico are controlled by 28 U.S.C. § 1258. The two provisions have no substantive differences. *Giles Toro,* 183 F.Supp.2d at 461.

■ Thus, under the *Rooker–Feldman* doctrine, federal courts below the United States Supreme Court may not exercise appellate jurisdiction over the decisions and/or proceedings of state courts, including claims that are "inextricably intertwined" with issues decided in state court proceedings. *D.C. Ct. of Appeals v. Feldman,* 460 U.S. at 486–87, 103 S.Ct. 1303; *Peterson Novelties, Inc. v. City of Berkley,* 305 F.3d 386, 390–91 (6th Cir.2002). Thus, courts have consequently adopted the rationale "that a federal claim is 'inextricably intertwined' with a state court judgment and thus implicates *Rooker–Feldman* when 'the federal claim succeeds only to the extent that the state court wrongly decided the issues before it[.]' ". *Executive Arts Studio, Inc. v. City of Grand Rapids,* 391 F.3d 783 (6th Cir.2004); *DLX, Inc. v. Kentucky,* 381 F.3d 511 (6th Cir.2004). Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment. *Peterson Novelties,* 305 F.3d at 391. *See, e.g., Anderson v. Charter Township of Ypsilanti,* 266 F.3d 487, 492–94 (6th Cir.2001) (applying "inextricably intertwined" test to hold *Rooker–Feldman* abstention appropriate).

The *Rooker–Feldman* doctrine proceeds to ask whether the federal plaintiff is seeking to set aside a state judgment or whether it presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party. If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion. *GASH Assocs. v. Rosemont,* 995 F.2d 726, 728 (7th Cir.1993).

Defendants' arguments are predicated in that plaintiffs herein claim they were dismissed from and are entitled to a position to which they were named during the electoral ban; and which the Courts of the Commonwealth of Puerto Rico have determined to have been unlawful appointments. Premised on this contention, de-

tion of the DNA results and subsequent finding of paternity); *Federación de Maestros de Puerto Rico, Inc. v. Junta de Relaciones del Trabajo de Puerto Rico,* 265 F.Supp.2d 186, 188 (D.Puerto Rico 2003) *affd.* 410 F.3d 17 (1st Cir.2005)(under the *Rooker–Feldman* doctrine, District Court had no jurisdiction to review decision by Supreme Court of Puerto Rico denying *writ of certiorari* to review decision upholding Puerto Rico labor commission's denial of employer's motion to dismiss based on exclusive jurisdiction of National Labor Relations Board (NLRB), even if decisions by courts of Puerto Rico were erroneous).

fendants submit these employees, plaintiffs herein Torres Heredia and Muñiz Cruz, are in essence seeking that this Court collaterally undo the legal effects of a final and unappealable Commonwealth's decision and under the principles of the *Rooker/Feldman* doctrine, this federal Court's jurisdiction is limited by the federalist deference due to the prior state court proceedings. In sum, defendants aver plaintiffs have no lawful First Amendment claim to enjoy the fruits of an appointment which has been determined by the state courts to have been contrary to state law.

■ Plaintiffs in their Opposition indicate their claim is a First Amendment violation premised on political discrimination. The state case final determination was not based in any political discrimination, herein plaintiffs were not a party to that case, nor do they belong to the same category of employees raised in the state case—SIF"s and Union's employees whose appointments were made during the electoral ban.

Indeed, a claim of political discrimination was never part of the state court final judgment but the merit principle. Even transitory and non-permanent employees and even applicants to an employment retain their First Amendment rights to be free from discrimination. No First Amendment claim was ruled upon in the state decision.[7] In fact, this Magistrate Judge's Opinion and Order has always granted deference to the prior decisions by

federal and state courts of the Commonwealth of Puerto Rico. The merit principle was held applicable to agencies with a collective bargaining agreement. Thus, due process claims were denied as to those plaintiffs alleging appointments under customary and accepted practice that did not require any process, job announcement, competition, pursuant to stipulation between the Union and the employer. See *Opinion and Order, of 2–25–2008 p. 25 (Docket No. 281)*. As such, the lack of a reasonable expectation of continued employment, and in the instant case, of reinstallment to any interim position, is not sufficient to justify this court from failing to exercise jurisdiction when the reasons for the employer's actions may be discriminatory and in violation of a First Amendment right. *Branti v. Finkel,* 445 U.S. 507, 512, n. 6, 100 S.Ct. 1287, 1291, n. 6, 63 L.Ed.2d 574 (1980).[8] There is a difference' between an employee's right to due process and the employee's First Amendment right to free political speech and association, even when dealing with employees who lack contractual benefits or tenure and their right to re-employment is academic. This situation has been considered irrelevant if dealing with free speech claims. *See Perry v. Sindermann,* 408 U.S. 593, 597–98, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972); *Santiago–Negrón v. Castro–Dávila,* 865 F.2d 431, 436 (1st Cir.1989).[9]

7. Plaintiffs Torres Heredia and Muñiz Cruz were non-Union employees for which they were not appointed to interim positions upon the agreement examined by the state court judgment which was in effect between the Union and the SIF employer. They also claimed they were not appointed during the electoral ban period discussed in the state court opinion, which started on September of 2000, but rather in August of 2000.

8. After *Elrod,* it is clear that the lack of a reasonable expectation of continued employment is not sufficient to justify a dismissal based solely on an employee's private political beliefs. *Elrod v. Burns,* 427 U.S. 347, 360 n. 13, 96 S.Ct. 2673, 2683 n. 13, 49 L.Ed.2d 547 (1976).

9. A new administration may not use the "nullity" of appointment doctrine as a cover for discharges, transfers, and discrimination

Estoppel would not be appropriate since the final state judgment did not deal with any First Amendment claims as raised by herein plaintiffs nor the *Rooker–Feldman* doctrine would be implied when plaintiffs, even if they prevail, may not be reinstated under equitable relief to positions no longer under legal existence, but may be able to request other type of relief not collaterally precluded.[10]

## C. Mt. Healthy/Lesage Standard.

Defendants finally submit that, even if plaintiffs could prove that the nominating authority knew of their political affiliation and acted because of said knowledge, defendants would still prevail as they easily meet their burden under *Mt. Healthy*[11] by showing that the adverse personnel transactions would have taken place in any event. *See Sánchez–López v. Fuentes–Pujols,* 375 F.3d 121, 131 (1st Cir.2004) ("[e]ven if a plaintiff meets his or her initial burden of showing that political affiliation was a motivating factor for an employment decision, that is insufficient to establish discrimination as a matter of law."); *Vélez–Rivera v. Agosto–Alicea,* 437 F.3d 145 (1st Cir.2006) (applying *Mt. Healthy/Lesage*); *see also Texas v. Lesage,* 528 U.S. 18, 20, 120 S.Ct. 467, 145 L.Ed.2d 347 (1999). Thus, defendants state the Court of Appeals for the First Circuit has not hesitated to apply the *Mt. Healthy* defense in null appointment cases; *see Aguiar–Carrasquillo v. Agosto–Alicea,* 445 F.3d 19, 25–27 (1st Cir.2006) (defendants presented in lieu of plaintiff's bare boned allegation of discrimination of a *prima fa-*

*cie* case, legitimate, non-discriminatory explanations for their adverse employment action).

Still, under the above interpretation of *Lesage,* plaintiffs' opposition asserts the *Mt. Healthy* defense would apply if it is undisputed that the government would have made the same decision regardless of political affiliation. Resting on the same case cited by defendants *Sánchez López v. Fuentes Pujols,* 375 F.3d at 132–133, plaintiffs submit the court should disregard at this stage defendants' submission to dismiss.

Under the *Mt. Healthy* standard, even if an employment action is illegal, defendants may meet the second prong by demonstrating they took corrective action against all employees [whose appointments violated Puerto Rico law] or could otherwise show that they would have taken the corrective action anyway. *Sánchez López,* 375 F.3d at 131. Defendants submit the interim positions, without the merit principle, were declared null and void by the state court's final judgment and they would have taken the same action of removing herein plaintiffs.

Regardless that the decision of the state courts found the appointments at the SIF null, which defendants now attempt to attach to non-party plaintiffs therein and to federal plaintiffs in this case retroactively, the ruling by the Commonwealth of Puerto Rico General Court of Justice was initially issued in October 8, 2001. It was thereafter appealed and the Supreme Court denied *certiorari* on June 2, 2002. Thus, at the time defendants took their decision to

---

based solely on political affiliation. *Santiago–Negrón v. Castro–Dávila,* 865 F.2d 436.

**10.** Additionally, as plaintiffs submit, the state judgment found a violation of the electoral ban in the appointments of the SIF 178 employees who were a party to said action. Plaintiffs in this federal action Torres Heredia

and Muñiz Cruz had been appointed prior to the electoral ban that began on September 8, 2000, and their appointments on August 1, 2000, could not be considered to be collaterally estopped by said state judgment.

**11.** *Mt. Healthy v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

remove herein plaintiffs Torres Heredia and Muñiz Cruz, by the latest date applicable of January of 2001, defendants had no substantiated knowledge of the illegality of appointments to serve as basis for their decisions. In fact, plaintiff Torres Heredia submits one of the interim positions he was denied was given, upon defendant Serrano's recommendation, to a PDP party affiliate who was thereafter appointed to a regular position. As such, plaintiffs consider reasonable to conclude appointments to interim positions at the time and prior to the state court final determination were seemly selective and not based on a uniformly applied personnel practice but rather on political considerations.[12] *Vélez–Rivera v. Agosto–Alicea*, 437 F.3d at 154; *Acevedo–García v. Vera–Monroig*, 204 F.3d 1, 10–11 (1st Cir.2000) (discriminatory application of an otherwise lawful layoff plan which established differential treatment in taking action against members of the opposing party but not against similarly situated members of the defendant's own party).

Formerly, at the summary judgment level, these same defendants, Serrano and Villahermosa, did not prevail in their claim of having a legitimate reason for their employment action under the qualified immunity doctrine therein discussed.

 *Lesage* determined, also at summary judgment level, it was undisputed that plaintiff did not meet the requirements to be admitted to studies for which defendants had put forth the defense they would have denied plaintiff's admission to a graduate program regardless of the alleged discriminatory basis for the decision. Henceforth, herein defendants Serrano and Villahermosa can hardly now survive the same arguments at a motion to dismiss level where all of the non-moving party's averments are to be taken as true, not subject to evaluation under a genuine issue of material fact in controversy on whether the reasons for their action at the time were pretextual.[13] Defendants bear the burden of persuading the factfinder that their reasons are credible. *Padilla–García v. Guillermo Rodríguez*, 212 F.3d 69 (1st Cir.2000). Still, nothing hinders defendants from submitting in a verdict form at least one question addressed to their defense since an employer may still prevail by showing it would have reached the same decision in the absence of the protected conduct in this case.[14]

## CONCLUSION

In view of the above discussed, defendants' Motion to Dismiss (**Docket No. 300**) is **DENIED**.

IT IS SO ORDERED.

---

12. Opinion and Order 2–25–2008, pp. 31–32 (Docket No. 281).

13. At summary judgment level plaintiffs were able to discredit the proffered non-discriminatory reason by establishing genuine issues of material fact that these were pretextual. Neither would defendants herein may establish the uniformly applied personnel practices, now predicated on legitimate reasons, should not constitute grounds for a political discrimination claim since plaintiffs have submitted the position from where Torres Heredia an NPP affiliate was removed was granted thereafter to a member of the opposing party, a PDP affiliate.

14. *Sánchez López v. Fuentes Pujols*, 375 F.3d at 133.