Angel **FEBUS–RODRIGUEZ,**
et al., **Plaintiffs**

v.

Enrique **QUESTELL–ALVARADO,**
et al., **Defendants.**

**Civil No. 06–1627(SEC).**

United States District Court,
D. Puerto Rico.

Sept. 18, 2009.

Opinion Denying Reconsideration
Oct. 2, 2009.

Frank D. Inserni–Milam, Frank D. Inserni Law Office, Luis R. Mellado–Gonzalez, Luis R. Mellado Gonzalez Law Office, Carlos J. Morales–Bauza, Rossello & Morales, CSP, San Juan, PR, for Plaintiffs.

Christian E. Pagan–Cordoliani, Puerto Rico Department of Justice, Anabelle Quinones–Rodriguez, Maymi, Rivera & Rotger, P.S.C., San Juan, PR, Johanna M. Emmanuelli–Huertas, Carmen Edith Torres–Rodriguez, Pedro Ortiz Alvarez Law Offices, Ponce, PR, Jorge Martinez–Luciano, M.L. & R.E. Law Firm, Hato Rey, PR, for Defendants.

### OPINION and ORDER

SALVADOR E. CASELLAS, Senior District Judge.

Pending before this Court is the Municipality of Santa Isabel's ("Municipality") Motion for Summary Judgment (Dockets ## 56 & 72), Plaintiffs' opposition thereto (Dockets ## 113 & 121), and the Municipality's Reply (Docket # 124–2). On July 13, 2009, the Municipality's Mayor, Enrique Questell–Alvarado ("Questell"), and the Human Resources Director, Natalie Rodriguez–Cardona, requested leave to join the Municipality's motion for summary judgment. Said request is hereby **GRANTED.** Upon reviewing the filings, and the applicable law, the Municipality, Questell, and Rodriguez's (collectively "Defendants") Motion for Summary Judgment

is **GRANTED in part and DENIED in part.**

### Factual Background

On June 22, 2006, Plaintiffs filed suit against Defendants under Section 1983, 42 U.S.C. § 1983, and Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141 & 5142.[1] In the complaint,[2] Plaintiffs, employees of the Municipality, allege that they were terminated from their positions due to their political affiliations with the Popular Democratic Party ("PDP"), after Questell, the candidate for the New Progressive Party ("NPP"), won the November 4, 2004 mayoral elections in the Municipality. After extensive discovery, the Municipality filed a motion for summary judgment on the following grounds: (1) that Plaintiffs' political harassment claims are time-barred; (2) that they have failed to adequately state procedural due process claims; (3) that Plaintiffs have failed to establish a *prima facie* case for political discrimination; (4) that there are legitimate non-discriminatory reasons for Plaintiffs' terminations; (5) that Questell and Rodriguez are entitled to qualified immunity; and (6) that Antonia Leon Alvarado, Juana Ortiz Perez, Jose Sanchez Rodriguez, Sonia Campos–Colon, and Luis Soto Santiago's claims are time-barred.

Plaintiffs opposed, arguing that they have set forth a *prima facie* case for political discrimination, and there are material issues of fact as to Defendants' proffered reason for Plaintiffs' terminations/demotions that preclude summary judgment. Plaintiffs also posit that Questell and Rod-

riguez are not entitled to absolute immunity. Notwithstanding, Plaintiffs assent to voluntarily dismiss their political harassment claims, except for Candida Jiménez Moreno and Cereida Muñoz's claims on this issue. Moreover, Plaintiffs concede that Antonia Leon Alvarado, Juana Ortiz Perez, Jose Sanchez Rodriguez, and Luis Soto Santiago's claims are time-barred.[3] Also, all transitory and Law 52 Plaintiffs assert to voluntarily dismiss their due process claims. Thus, pending before this Court is whether Plaintiffs pled a *prima facie* case of political discrimination, whether Cereida Muñoz and Candida Jiménez's claims for political harassment are time-barred, whether the career employees' due process claims prosper, and whether Questell and Rodriguez are entitled to qualified immunity.

### Standard of Review

#### R. FED. CIV. P. 56

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ramírez Rodríguez v. Boehringer Ingelheim,* 425 F.3d 67, 77 (1st Cir.2005). In reaching such a determination, the Court may not weigh the evidence. *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.,* 42 F.3d 668 (1st Cir.

---

1. Plaintiffs' claims under Law 100, their substantive due process claims, and their request for punitive damages were dismissed by this Court. *See* Docket # 34. Also, Plaintiffs voluntarily dismissed their COBRA claims. *See* Dockets ## 38 and 148.

2. Plaintiffs filed the initial complaint on June 22, 2006. Docket # 4. Thereafter they filed an amended complaint (Docket # 5), and a second amended complaint (Docket # 39).

3. Sonia Campos–Colon claims were dismissed for failure to appear at her deposition. *See* Docket # 79.

1994). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." *Maldonado–Denis v. Castillo–Rodríguez*, 23 F.3d 576, 581 (1st Cir.1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party' and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" *DePoutot v. Raffaelly*, 424 F.3d 112, 116 (1st Cir.2005) (citing *Garside*, 895 F.2d at 48 (1st Cir. 1990)); *see also SEC v. Ficken*, 546 F.3d 45, 51 (1st Cir.2008).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. *See Hadfield v. McDonough*, 407 F.3d 11, 15 (1st Cir.2005) (citing *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir.1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." *Méndez–Laboy v. Abbott Lab.*, 424 F.3d 35, 37 (1st Cir.2005) (citing *Maldonado–Denis v. Castillo–Rodríguez*, 23 F.3d 576, 581 (1st Cir.1994)). "The non-movant must 'produce specific facts, in suitable eviden-

tiary form' sufficient to limn a trial-worthy issue.... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.*; *see also Kelly v. United States*, 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina–Muñoz*, 896 F.2d at 8 (citing *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

**Uncontested Facts**

Because the instant motion is for summary judgment, the parties must comply with the requirements of Local Rule 56, and file a statement of facts, set forth in numbered paragraphs, and supported by record citations. *See* Local Rule 56(b). In turn, when confronted with a motion for summary judgment, the opposing party must:

> [s]ubmit with its opposition a separate, short, and concise statement of material facts. The opposition shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule.

Local Rule 56(c). If the opposing party fails to do so, "summary judgment should, if appropriate, be entered." FED.R.CIV.P. 56(e)(2). These rules "are meant to ease the district court's operose task and to prevent parties from unfairly shifting the burdens of litigation to the court." *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir.2007). When the parties ignore the Local Rule, they do so

at their peril. *See Ruiz Rivera v. Riley,* 209 F.3d 24, 28 (1st Cir.2000).

In the present case, Defendant complied with Rule 56, and submitted a Statement of Uncontested Facts (Docket # 72) (hereinafter "Defendant's SUF"), numbered, and supported by record citations. In opposition, Plaintiffs filed a statement of contested material facts ("Plaintiffs' SCMF"), as well as 51 additional uncontested facts ("Plaintiffs' AUF"). Docket # 121. Defendants did not oppose Plaintiffs additional uncontested facts, and as such, this Court will deem uncontested those facts that are properly supported by the record.

Upon reviewing the record, this Court finds that the facts set forth at Defendant's SUF ¶¶ 1, 2, 14[4] 19–23, 26, 30, 32, 39, 41–45, 49 and 52 were admitted by Plaintiffs, and as such, are deemed uncontested.[5] However, Plaintiffs properly controverted Defendants' SUF ¶¶ 3, 4, 5, 15,[6] 17,[7] 18, 25, 27[8] 29, 34, 35, 36, 40, and 46.

Based on the foregoing, this Court finds that the following pertinent facts, are uncontested:

On November 2, 2004, General Elections were held in Puerto Rico. Defendants' SUF ¶ 1. Prior to the 2004 elections, the PDP had been in power in Santa Isabel for eight years, from 1996 to 2004. Plaintiffs' AUF ¶ 1. In the 2004 Elections, Questell ran under the insignia of the NPP, in the mayoral race for the Municipality, and defeated Angel Sánchez Bermúdez, the incumbent Mayor running for reelection under the PDP. Defendants' SUF ¶ 2. According to some of the plaintiffs' testimony, the 2004 municipal elections were heavily contested, and there was a heated political atmosphere throughout Santa Isabel. Plaintiffs' AUF

---

4. Plaintiffs allege that although Ordinance # 28 was approved by the Municipal Assembly, the economic needs study was never submitted to the Assembly, and instead, the presentation and approval process was controlled by Reinaldo Melendez, Irma Vargas, and Rodriguez.

5. Plaintiffs failed to provide record citations in opposition to Defendant's SUF ¶¶ 6 and 16. The citation provided at Defendant's SUF ¶ 7 does not lend support to said statement, and as such, will be disregarded upon ruling on the instant motion. Moreover, Defendants' SUF ¶¶ 8 and 9 are irrelevant to the issues raised in the motion for summary judgment.

6. Specifically, at SUF ¶ 15, Defendants aver that Municipal Ordinance No. 28 ("Ordinance 28") complies with the Office of the Commissioner for Municipal Affairs's ("OCAM") recommendation as to the procedural steps in the implementation of a layoff plan. However, OCAM's recommendation, included as Exhibit 11, is dated July 29, 2005, and Ordinance 28 was approved on June 27, 2005. Since the Ordinance's approval date precedes OCAM's letter, this Court cannot conclude that the Ordinance was expressly enacted in compliance with the recommendations set forth in the letter, albeit the former's content may coincidentally conform with the latter's recommendations.

7. Although Defendants' SUF ¶ 17 proposes that, as of 2005, the Municipality lacked a system to evaluate the employees' performance, the document at Exhibit 12 shows that a system was in place since 2002. Plaintiffs also showed that some regular employees were dismissed prior to July 1, 2005, and thus their files were not reviewed in order to determine the years of service accrued by those employees.

8. Defendants SUF ¶ 25 avers that per the Mayor's request, Rodriguez submitted a list of positions to be eliminated within each job classification, which was supposed to be based on information provided to Rodriguez by the heads of the municipality's departments, whereas Defendants' SUF ¶ 27 proposes that the Mayor did not have any involvement in these matters. However, Plaintiffs show that, pursuant to Rodriguez's deposition testimony, she did not recall if all the department heads complied with the mayor's request, and that some directors channeled the information directly to the mayor.

¶ 1. During this period, the NPP campaign continuously played and/or ran a musical jingle which stated "You are all going out", referring to the ousting of the PDP municipal employees. *Id.* After Questell won the election in November 2004, the above-mentioned "jingle" continued to be played throughout Santa Isabel during the months of January, February and March, 2005. *Id.* at 2. Moreover, shortly after his election, on December 16, 2004, Questell filed a *writ of mandamus* in the Commonwealth's Court, Ponce Superior Section, against Sánchez Bermúdez, and other six members of his staff, seeking to compel the transition process, as provided under the Autonomous Municipalities Act. P.R. Laws Ann. tit 21 § 4111. Defendants' SUF ¶ 3. In January 2005, the Municipality retained the services of an accounting firm, to conduct an assessment of the budgetary situation. *Id.* at 5.

On June 8, 2005, the Santa Isabel Municipal Legislature passed Municipal Ordinance # 28 ("Ordinance 28"), to approve a Plan to lay off, transfer, or demote municipal employees based on the needs of the Municipality and/or the availability of municipal funds. *Id.* at 14. Ordinance 28 became a municipal law after Questell signed it on June 27, 2005. *Id.* Said ordinance was posted in bulletin boards in each department of the Municipality. *Id.* at 16. On July 29, 2005, the OCAM issued Circular Letter 2005–10, defining the particular process to follow for the approval and implementation of a municipal Lay Off plan, in compliance with the Autonomous Municipal Act. *Id.* at 13.[9] OCAM's Circular Letter 2005–10 encouraged all municipalities to have an approved Lay Off plan, even if its implementation had not yet been decided. *Id.*

Questell did not have any involvement in the review of personnel files, nor participated in the draft of the lists detailing the years of services and seniority status of the career municipal employees. *Id.* at 19. The career employees were notified on or around of August 1, 2005, by the Human Resources Department with a written notice of his/her years of public service, pursuant to the personnel records reviewed. *Id.* at 20. In said written notice, each employee was advised of his/her right to request within ten days, corrections with regards to the years of public service informed, and to submit the documents in support thereof. *Id.* Copies of the preliminary list prepared by the Human Resources Department with the information of years of public services accrued by all the municipal employees were posted in the bulletin boards of the Municipality. *Id.* at 21. Nineteen employees, six of them Plaintiffs in this case, requested corrections and amendments to the Human Resources Department regarding the information of his/her years of public service. *Id.* at 22. After the Human Resources Department reviewed the corrections requested by said employees, an amended list with the seniority status of all the career employees was issued on or around of September 2, 2005, with the changes requested by each employee. *Id.* at 23. Copies of the Amended List of Seniority Status were posted in the bulletin boards at the Municipality's City Hall. *Id.*

On September 1, 2005, Questell gave Rodriguez written instructions to perform an evaluation of the existing positions, and to submit recommendations as to the number of job posts that could be eliminated to deter the budgetary deficit. *Id.* at 24.[10]

---

9. The document at Exhibit 11 (Docket # 72–14) is dated July 29, 2005, not June 2005.

10. Plaintiffs argue that Exhibit 20, provided in support of Defendants' SUF ¶ 24, does not mention "without affecting the provision of

On September 15, 2005, Questell sent a letter to Rodriguez, ordering the elimination of 44 positions. *Id.* at 26. Also in September 2005, Mayor Questell requested an updated assessment from the external financial advisors and to the Finance Director regarding the Municipality's financial status. *Id.* at 28. As a result of Questell's request, accountant Reinaldo Meléndez, and the Finance Director, Irma Vargas ("Vargas"), issued on October 5, 2005 a "Transition Report" stating the Municipality's financial status after the closing of FY 2004–2005. *Id.* at 6 [11] and 28.

The Transition Report listed, among others, the following findings about the municipality's fiscal status: that 82% of the municipal budget for FY 2004–2005 was compromised for payroll and fringe benefits of the municipal employees, leaving only 18% of the budget to render services to citizens and permanent public works, more than 50% of the operational budget for that fiscal year had been spent by the outgoing administration, despite the fact that it was an electoral year, that the revenues had been grossly overestimated while the expenses were underestimated, and that the operational budget of the Municipality would increase to $15 million. *Id.*

According to the audits performed by the PR Comptroller's Office, the Municipality had the following accumulated budgetary deficits in the previous fiscal years: $3,482,841 in 2000–01; $4,921,762 in 2001– 02; $3,557,466 in 2002–03; $3,832,308 in 2003–04; $7,261,639 in 2004–05; $6,062,699 in 2005–06; and $3,278,031 in 2006–07. *Id.* at 10.[12] According to the latest audit performed by the PR Comptroller's Office in the Municipality, the accumulated deficits reflected for the last fiscal four years represent the following percentages of the municipal budgets 45%, 83%, 75%, and 41%, respectively. *Id.* at 11.[13] The audits conducted by the PR Comptroller's Office also reflect that for FY 2004–05, the number of municipal employees—thus the payroll costs and fringe benefits—also reached its highest scores in six years. *Id.* at 12. However, the non-professional employees and contractors' salaries are not included in said amounts, since they were not considered as Municipality employees. *Id.* The most recent audit also shows a deficit reduction achieved mainly in the FY 2006– 2007. *Id.* at 37.

On October 17, 2005, the Santa Isabel Municipal Legislature approved Municipal Ordinance No. 21 (Series 2005–2006), to amend sections 7 and 10 of Municipal Ordinance (Series 2004–2005). Pursuant to that amendment, other financial alternatives to be evaluated by the Municipality in order to avoid laying off employees, would be available only if considered viable under the financial constraints endured by the Municipality. *Id.* at 30. On October 18, 2005, when news of the imminent dismissals of the PDP career employees spread

services." Upon reviewing the record, this Court finds that the document at Exhibit 20 does not include said wording. As such, that portion will be disregarded by this Court.

**11.** This Court notes that albeit Defendants state that the Transition Report is dated February 15, 2009, the document provided in support of said statement shows that the report is dated October 5, 2005. Moreover, this Court will consider the exact wording provided in said report.

**12.** Plaintiffs note that the information therein cited refers to "accumulated deficits."

**13.** Plaintiffs note that Exhibit 8, cited at Defendants' SUF ¶ 11, also shows that the Municipality's ordinary expenses and public debt increased during the 2005–2006, and 2006– 2007 fiscal years.

throughout the Santa Isabel City Hall, a group of PDP affiliates and employees, including many of the plaintiffs in this case, gathered in front of City Hall to protest the imminent dismissals. Plaintiffs' AUF ¶ 3. While the multitude gathered outside of City Hall, several of the PNP employees that remained working inside laughed at, and mocked the crowd outside. *Id.* On even date, written layoff notices were handed to certain municipal career and transitory employees. Defendants' SUF ¶ 31.[14] Pursuant to the terms of the notice, the layoff would become effective after 30 days from receiving the letter. *Id.* The letter also advised all discharged employees about their right to appeal their dismissal to the Puerto Rico Appellate Commission of the Human Resources System (known as "CASARH" for its Spanish language acronym). *Id.* at 32. Nineteen career employees laid off on November 2005 filed an appeal before CASARH. *Id.* at 32. Three of the employees laid off on November 2005 were offered posts under Law 52 contracts that became vacant that same month. *Id.* at 33.

According to Questell's July 23, 2008 deposition testimony, he did not know how many employees worked for the municipality during fiscal years 2005, 2006, 2007 and 2008. Plaintiffs' AUF ¶ 7. He pointed out that Rodriguez, as Human Resources Director, knows the amount of municipal employees. *Id.* at 8. However, Questell declared that, after June 30, 2005, the Municipality hired and/or appointed employees. *Id.* at 27. Moreover, he does not recall whether the Municipality instituted a hiring freeze when the layoff plan was being carried out. *Id.* at 26.

*Natalie Rodriguez, Human Resources Director*

Natalie Rodríguez Cardona began as the Human Resources Director in February 2005. Defendants' SUF ¶ 41; Plaintiffs' AUF ¶ 9. Before February 2005, Rodriguez never worked for, nor occupied any position with the Municipality. Defendants' SUF ¶ 41. Rodríguez is not a political activist, nor has she been in the past; her involvement in politics has been limited to serving in the 2000 General Elections as a polling station volunteer for the NPP at a school in Santa Isabel. *Id.* at 42. Before becoming the Human Resources Director, Rodriguez had only personally met very few of the Plaintiffs in the context of her immediate prior work as a teller in a Coop Bank in Santa Isabel. *Id.* at 43.

According to Rodriguez, she did not have any personal involvement in the final decision taken in regards to the job posts and classifications to be eliminated, since her participation was limited to providing, through a letter dated September 12, 2005, the information gathered from the directors of the municipal departments as to the number of positions needed in each work unit. *Id.* at 44. Rodríguez did not have any personal involvement in the decision not to renew any of Plaintiffs' contracts. *Id.* at 45. During her tenure as Human Resources director, Rodriguez never received written instructions stating that there was a hiring freeze at the Municipality, and she did not have any knowledge that positions were frozen in 2005. Plaintiffs' AUF ¶ 11.

*Ana Cora Silva*

Ana Cora Silva was a transitory employee working at the Community Development Block Grant Federal HUD program, as a Labor Regulations Technician. Plaintiffs' AUF ¶ 36. Cora and Nitza Sánchez Rodríguez prepared the HUD Federal

---

**14.** This proposed fact is partially admitted by Plaintiffs. However, there is controversy as to the specific amount of employees that were served the written layoff notice.

Proposal for the fiscal year 2005–2006 (October 1 to September 30). *Id.* at 37. When HUD approved said proposal, it included both of these plaintiffs' names as employees, and later both names were crossed out by supervisor Edwin Rodríguez and Questell. *Id.* Luz Yahaira Pabón, a PNP affiliate at that time, became the Labor Standards Technician. *Id.*

*Angel Febus*

Angel Febus held the career position of Recycling Coordinator. *Id.* at 40. Febus was a political activist of the PDP, and Questell recognized him as such. *Id.* at 42. Febus led a PPD protest-rally in October 2005 in front of City Hall. *Id.* at 44. He was also a delegate of AEELA.[15] *Id.* at 43. During a meeting with Questell, held on August 18, 2005, Febus requested that the Municipality pay AEELA the remittances owed for its employees. *Id.* The Municipality's failure to pay said remittances prompted him to file an injunction before the Ponce Court. *Id.*

**Applicable Law and Analysis**

*Political Discrimination Claims*

The Supreme Court has held that Section 1983 in itself does not confer substantive rights, but provides a venue for vindicating federal rights elsewhere conferred. *See Graham v. M.S. Connor,* 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In the instant case, Plaintiffs' Section 1983 claims are based on alleged violations of the First Amendment. In order to prove liability under Section 1983, "plaintiffs must show by a preponderance of the evidence that: (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the

United States." *Id.* (citing *Velez–Rivera v. Agosto–Alicea,* 437 F.3d 145, 151–52 (1st Cir.2006)). "While plaintiffs are not held to higher pleading standards in section 1983 actions, they must plead enough for a necessary inference to be reasonably drawn." *Marrero,* 491 F.3d at 10. Moreover, when alleging political discrimination under Section 1983, plaintiffs must produce evidence that partisanship was a substantial or motivating factor in the adverse employment action. *See Maymi v. P.R. Ports Authority,* 515 F.3d 20, 25 (1st Cir. 2008).

The First Circuit has held that "[t]he right to associate with the political party of one's choice is an integral part of the basic constitutional freedom to associate with others for the common advancement of political beliefs and ideas protected by the First Amendment." *Carrasquillo v. Puerto Rico,* 494 F.3d 1, 4 (1st Cir.2007) (citing *Kusper v. Pontikes,* 414 U.S. 51, 56–57, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973)). As a general rule, "the First Amendment protects associational rights ... [and] the right to be free from discrimination on account of one's political opinions or beliefs." *Galloza v. Foy,* 389 F.3d 26, 28 (1st Cir.2004). Since public employees "generally enjoy protection from adverse employment actions based on their political affiliations," this Circuit has held that "a government employer cannot discharge public employees merely because they are not sponsored by or affiliated with a particular political party." *Id.; see also Maymi,* 515 F.3d at 25; *Carrasquillo,* 494 F.3d at 4 (citing *Branti v. Finkel,* 445 U.S. 507, 517–19, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)).[16] This protection extends to ca-

**15.** Spanish acronym for "Asociación de Empleados del Estado Libre Asociado", meaning

Association of the Employees of the Commonwealth.

**16.** The First Amendment also protects against

reer employees, trust employees, transitory employees, and independent contractors. *Martinez–Baez v. Rey–Hernandez*, 394 F.Supp.2d 428, 434 (D.P.R.2005) (citing *Nieves–Villanueva v. Soto–Rivera*, 133 F.3d 92, 98 (1st Cir.1997)); *see also O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996).

■ The First Amendment's protection against political discrimination also extends to adverse employment actions short of dismissal; that is, "promotions, transfers and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees." *Rutan v. Republican Party*, 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). Furthermore, it "includes changes in employment, which, although not as extreme as dismissal, result in working conditions 'unreasonably inferior' to the norm for the position at issue." *Carrasquillo*, 494 F.3d at 4 (citations omitted). Thus the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially his interest in freedom of speech[; for] if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to produce a result which it could not command directly." *Rutan*, 497 U.S. at 72, 110 S.Ct. 2729.

■ Political discrimination claims must be reviewed through a burden-shifting scheme: the plaintiff must first show that "he engaged in constitutionally protected conduct, and that this conduct was a

substantial or motivating factor for the adverse employment decision." *Mt. Healthy v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (superseded on different grounds); *Carrasquillo*, 494 F.3d at 4; *Padilla v. Rodríguez*, 212 F.3d 69, 74 (1st Cir.2000). Thus in order to establish a *prima facie* case of political discrimination, a plaintiff must demonstrate "that party affiliation was a substantial or motivating factor behind a challenged employment action." *Marrero*, 491 F.3d at 9. The First Circuit has held that a plaintiff must first "make four showings": (1) that the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's opposing political affiliation; (3) there is a challenged employment action; and (4) there is sufficient direct or circumstantial evidence that political affiliation was a substantial or motivating factor in defendant's decision. *Peguero–Moronta v. Santiago*, 464 F.3d 29, 48 (1 st Cir.2006) (internal citation and quotation omitted); *see also Monfort–Rodriguez v. Rey–Hernandez*, 599 F.Supp.2d 127, 168 (D.P.R.2009).

■ When the plaintiff satisfies this initial burden, the burden then shifts to the defendant to show that "it would have taken the same action regardless of the plaintiff's political beliefs-commonly referred to as the *Mt. Healthy* defense." *Padilla*, 212 F.3d at 74; *Carrasquillo*, 494 F.3d at 4; *Torres–Martinez v. P.R. Dept. Of Corrections*, 485 F.3d 19, 23 (1st Cir. 2007); *Rodriguez–Rios v. Cordero*, 138 F.3d 22 (1st Cir.1998). That is, the defendants must "demonstrate that (i) they would have taken the same action in any event; and (ii) they would have taken such action for reasons that are not unconstitutional." *Velez–Rivera v. Agosto–Alicea*,

other adverse employment actions, such as demotions. *See Marrero v. Molina*, 491 F.3d

1 (1st Cir.2007).

437 F.3d 145, 152 (1st Cir.2006) (citing *Mt. Healthy,* 429 U.S. at 286–87, 97 S.Ct. 568). If the defendant makes such a showing, the plaintiff may attempt to discredit the tendered nondiscriminatory reason with either direct or circumstantial evidence. *Id.* at 153. In determining the sufficiency of Plaintiffs' evidence, the First Circuit has held that although a highly charged political atmosphere alone cannot support an inference of discriminatory animus, when coupled with "the fact that plaintiffs and defendants are of competing political persuasions, may be probative of discriminatory animus." *Rodriguez–Rios,* 138 F.3d at 24. Notwithstanding, political discrimination claims always require "that defendants have knowledge of the plaintiffs['] political affiliation." *Martinez–Baez,* 394 F.Supp.2d at 434; *Hatfield–Bermudez v. Aldanondo–Rivera,* 496 F.3d 51, 61–62 (1st Cir.2007).

In their motion for summary judgment, Defendants aver that Plaintiffs have failed to establish a *prima facie* case of political discrimination. Specifically, they aver that Plaintiffs have not shown that Questell and Rodriguez knew all of Plaintiffs' political affiliations. As to Rodriguez, Defendants contend that she did not know any of the Plaintiffs' herein political affiliation. However, they concede that Questell personally knows 24 of the Plaintiffs, and is aware that said plaintiffs are PDP affiliates. Defendants further contend that the evidence set forth by Plaintiff is insufficient to raise their claims above the speculative level, that is, to establish a causal link between the adverse employment action and the alleged discriminatory animus. According to Defendants, Plaintiffs' allegations that Defendants knew about their political affiliation because they participated as election officials during elections, and attended political rallies as PDP members have been rejected by this Circuit. Notwithstanding, Defendants also proffer a legitimate non-

discriminatory reason for the employment actions taken against Plaintiffs. Specifically, they argue that the Lay Off Plan was implemented due to the Municipality's financial crisis, and was not politically motivated. Thus Defendants posit that they would have taken the same action in any event for non-discriminatory reasons.

In opposition, Plaintiffs argue that the Layoff Plan, implemented through Ordinance 28, was hastily approved, without prior studies and recommendations regarding the alleged financial crisis. They further note that although Ordinance 28 provides five alternatives to be considered prior to dismissal, that is, re-assignment of personnel, re-training of employees, leave without pay, reduction of working hours, and demotions, per Rodriguez admission, these were never offered to Plaintiffs prior to their dismissals. Plaintiffs also contend that the fact that seniority was only considered within each job classification negated the senior employees' rights. Plaintiffs aver that albeit Ordinance 28 was subsequently amended on October 2005, all employees that were terminated between June 30 and October 2005 were entitled to the above-mentioned alternatives. Notwithstanding, Plaintiffs posit that the day after Ordinance 28 was amended, most of the plaintiffs received their termination letters. According to Plaintiffs, the 2004 elections were hotly contested, and this led to politically motivated employment actions. Moreover, they argue that despite the Municipality's alleged financial crisis, it continued to hire new employees in 2005, 2006, 2007, and 2008. They also point out that the Municipality's regular expenses, and public debt increased during fiscal years 2005–2006, and 2006–2007. Based on the foregoing, Plaintiffs argue that Defendants' Mt. Healthy defense is pre-textual.

In the present case, there is no controversy as to the fact that Plaintiffs and Defendants belong to opposing political affiliations, and that there is a challenged employment action. Thus this Court's analysis hinges on whether Defendants knew about Plaintiff's opposing political affiliation, and whether there is sufficient direct or circumstantial evidence that political affiliation was a substantial or motivating factor in Defendants' decision.

Per the uncontested facts, Questell admits that he could not discard knowing many of the plaintiffs by their nicknames, since he may recognize them if he sees them in person, even though he may not know their full names. Plaintiffs' AUF ¶¶ 7 and 25. Notwithstanding, as of 2005, he admittedly knew the following Plaintiffs by name: Angel Febus Rodríguez, Eugenio Reyes Alomar, Emma Espada Soto, Julio Espada Soto, Alma Jusino, Alma Mora, Cereida Muñoz, Farelyn Torres Colón, Karen Soldevila Muñoz, Luis Ithier Correa, Zasha Martínez Palermo, Ravindranas Laboy, Candida Jiménez, Angelita Rodríguez Colón, Héctor Rivera, Benoni Vega Suárez, Evelyn Leandry, Pablo Torres Rodríguez, Evelyn Rivas, Leslie Rentas, Sonia Campos, Ana Cora and Carlos Hernández Alvarado, Silverio Cruz, and Angelo Pedroso. Defendant's SUF at 38. He also knew that said Plaintiffs are PDP affiliates. Id. at 39. Moreover, Plaintiffs showed that Questell knew Lourdes Romero was affiliated with the PDP. Id. at 49.[17]

As to the remaining Plaintiffs, after reviewing the record, this Court finds that although Questell admits that he could not discard knowing many of the plaintiffs by their nicknames or full names, Plaintiffs have not shown that Defendants knew

each Plaintiffs' political affiliation. The First Circuit provides that "[a] prima facie case is not made out when there is no evidence that an actor was even aware of the plaintiff's political affiliation." *Hatfield–Bermudez*, 496 F.3d at 61. In fact, in *Gonzalez–De–Blasini v. Family Dep't.*, 377 F.3d 81, 85–86 (1st Cir.2004), this Circuit upheld the district court's granting of defendants' motion for summary judgment, upon finding that plaintiff failed to show that the defendants knew about her political affiliation. The Court stated that the fact that plaintiff was a well-known supporter of the opposing party, had held previous trust positions under said party's administration, and that was allegedly demoted after they assumed power, was insufficient to show that defendants knew about her political affiliation, and that said affiliation was the motivating factor for her demotion. *Id.*; *see also Cosme–Rosado v. Serrano–Rodriguez*, 360 F.3d 42, 48 (1st Cir.2004) (finding that a PDP Mayor's statement that he intended to "rid the town of NPP activists" was not enough to show that political affiliation was motive for adverse employment action); *Acevedo–Diaz v. Aponte*, 1 F.3d 62, 69 (1st Cir.1993) (holding that the fact that plaintiffs were conspicuous targets for discriminatory employment action by defendants because they prominently supported a former mayor is not enough to show motive).

Similarly, this district recently granted a municipality defendant's motion for summary judgment, holding that "none of the plaintiffs, except [a specified few] offer[ed] evidence that [defendant] had first-hand knowledge of their affiliations" with the opposing party. *Díaz–Ortiz v. Díaz–Rivera*, 611 F.Supp.2d 134, 144

---

17. Lourdes Romero, a PDP affiliate, worked at the Municipality until July 31, 2005. Plaintiffs' AUF ¶ 49. Questell knew her personally, as well as her political affiliation. *Id.* After

winning the candidacy for the mayor's position, Questell told Romero he was going to make her switch parties from the PDP to the PNP. *Id.*

172

(D.P.R.2009) (citations omitted); *see also Roman v. Delgado Altieri,* 390 F.Supp.2d 94, 102 (D.P.R.2005) (citing *Aviles–Martinez v. Monroig,* 963 F.2d 2, 5 (1st Cir. 1992)). The court further noted that "even when circumstantial evidence may be sufficient to support a finding of political discrimination, plaintiffs must still make a fact-specific showing that a causal connection exists between the adverse employment action and their political affiliation." *Id.* (citations omitted); *see also Monfort–Rodriguez v. Rey–Hernandez,* 599 F.Supp.2d 127 (D.P.R.2009).

 The fact that the plaintiffs were municipal employees under the previous administration does not constitute evidence of their political affiliation. *Hatfield–Bermudez,* 496 F.3d at 62. This Circuit has also held that even when a plaintiff is a well-known supporter of a different political party, this may not suffice to show that a challenged employment action is premised on political affiliation. *Gonzalez–De-Blasini v. Family Dep't.,* 377 F.3d 81, 85–86 (1st Cir.2004). Also,

> a plaintiff cannot prove that the defendant had knowledge of his political affiliation merely through: testimony of having been seen, or, for that matter, met during routine campaign activity participation, having been visited by the now incumbent while said defendant was a candidate to the position he now holds, by having held a trust/confidential/policymaking position in the outgoing administration, by having political propaganda adhered to plaintiff's car and/or house, or through knowledge of third parties.

*Roman,* 390 F.Supp.2d at 102–03. Furthermore, mere temporal proximity between an adverse employment action and a change of administration is insufficient to establish discriminatory animus. *Aceve-*

*do–Díaz v. Aponte,* 1 F.3d 62, 69 (1st Cir.1993).

As in *Gonzalez–De-Blasini,* 377 F.3d 81, 86, the Court recognized that a *prima facie* case for political discrimination may be built on circumstantial evidence. That is, a plaintiff "need not produce direct evidence of discriminatory treatment (a so-called 'smoking gun') to establish a prima facie case of politically discriminatory demotion [or termination]." *Aguiar–Carrasquillo v. Agosto–Alicea,* 445 F.3d 19, 26 (1st Cir.2006). However, most Plaintiffs in this case have not "generated 'the specific facts necessary to take the asserted claim out of the realm of speculative, general allegations' " regarding Defendants' knowledge of their political affiliation. *Gonzalez–De-Blasini,* 377 F.3d at 86. The fact that Questell, in his deposition testimony, stated that he may recognize some of Plaintiffs' faces, does not equate knowledge of their political affiliations. Therefore Plaintiffs' proposition is speculative, and insufficient to satisfy the *prima facie* case standard. *See cf. Aponte–Santiago v. Lopez–Rivera,* 957 F.2d 40, 43 (1st Cir. 1992) (finding that plaintiff's sworn statement that defendants knew his political affiliation is enough to satisfy the *prima facie* case requisite); *Rodriguez–Rios v. Cordero,* 138 F.3d 22, 24 (1st Cir.1998) (holding that the district court erred in granting summary judgment when the plaintiff proffered evidence showing that her PDP affiliation was widely known, and that defendants were aware of her political affiliation); *Montfort–Rodriguez v. Rey–Hernandez,* 504 F.3d 221, 225–226 (1st Cir. 2007) (holding that although plaintiffs did not produce direct evidence that Rey was aware of their political affiliation, there was enough circumstantial evidence-Rey and the human resource personnel's deposition testimony—to render the case more circumstantial than speculative).

Accordingly, if Defendants did not know Plaintiffs' political affiliation, said factor could not have been a substantial motivating factor for any adverse employment action. As a result, this Court finds that most Plaintiffs have "not met the burden of showing that [their] political affiliation was a substantial or motivating factor for the challenged employment action[s]." *Id.* Based on the foregoing, all Co–Plaintiffs, except Angel Febus Rodríguez, Eugenio Reyes Alomar, Emma Espada Soto, Julio Espada Soto, Alma Jusino, Alma Mora, Farelyn Torres Colón, Karen Soldevila Muñoz, Luis Ithier Correa, Zasha Martínez Palermo, Ravindranas Laboy, Angelita Rodríguez Colón, Héctor Rivera, Benoni Vega Suárez, Evelyn Leandry, Pablo Torres Rodríguez, Evelyn Rivas, Leslie Rentas, Ana Cora, Carlos Hernández Alvarado, Silverio Cruz, Angelo Pedroso, and Lourdes Romero's political discrimination claims are **DISMISSED with prejudice.**

However, this Court must also determine whether the remaining Plaintiffs have sustained their initial burden to show that the last requisite of the four prong test is met, that is, that their political affiliation was the motivating or substantial factor behind the alleged adverse employment action. In the present case, Plaintiffs have shown that there was a highly charged political environment. Pursuant to the uncontested facts, the 2004 municipal elections were heavily contested, and there was a heated political atmosphere throughout Santa Isabel. Plaintiffs' AUF ¶ 1. In addition to the fact that the NPP campaign continuously played and/or ran a musical jingle which stated "You are all going out" from November 2004 through March 2005 (Plaintiffs' AUF ¶ 2), shortly after his election, en December 16, 2004, Questell filed a *writ of mandamus* in the Commonwealth's Court, Ponce Superior Section, against mayor Sánchez Bermúdez, and other six members of his staff, seeking to compel the transition process. Defendants' SUF ¶ 3. Moreover, on October 18, 2005, a group of PDP affiliates and employees, including many of the plaintiffs in this case, gathered in front of City Hall to protest their dismissals, and several of the PNP employees that remained working inside laughed at, and mocked the crowd outside. Plaintiffs' AUF ¶ 3.

In political discrimination cases, "[a] highly charged political atmosphere whereby one party takes over power from another, combined with the fact that the plaintiff and defendant are of opposing parties may be probative of discriminatory animus." *Pagan–Cuebas v. Vera–Monroig,* 91 F.Supp.2d 464, 474 (D.P.R.2000). Also, "factors that have been found to show discriminatory animus include the fact that the plaintiff was a known member of the opposing party, that the position was then filled by a member of the opposite political party, and that everyone of the plaintiff's party was demoted after a change in office." *Flores–Camilo v. Alvarez–Ramirez,* 283 F.Supp.2d 440, 448 (D.P.R.2003). Courts must determine whether "the circumstantial evidence, taken as a whole, gives rise to a plausible inference or discriminatory animus which, ultimately possesses enough convictive force to persuade a rational fact-finder that the defendants' conduct was politically motivated?" *Id.* In this case, this Court finds in the affirmative.

Although Defendants proffer a *Mt. Healthy* defense, arguing that the 2005 Lay Off Plan that led to Plaintiffs' terminations was implemented exclusively due to the Municipality's financial crisis, the record shows that pursuant to Rodriguez's testimony, when she started to work in said position, the Municipality had

"more or less three hundred fifty (350) employees, and as of July 24, 2008, the Municipality had over four hundred (400) employees." Plaintiffs' AUF ¶ 9. She also stated under oath that "at certain times" there have been increases in the number of employees at the municipality year by year. *Id.* Questell also declared that, after June 30, 2005, the Municipality hired and/or appointed employees. *Id.* at 27. Specifically, the Municipality hired new employees as office clerks to substitute PDP followers, such as Gerardo Márquez, who held a trust position. *Id.*

Moreover, pursuant to a certification dated December 15, 2006 by Rodríguez, the Municipality contracted 168 persons through Law 52 funds during fiscal year 2005–2006, despite allegations that the Law 52 Plaintiffs' contracts were not renewed due to lack of funds. *Id.* at 38. Although all Law 52 Plaintiffs remained working until the expiration date of their work contract, none of the law 52 employees in the municipality's roster of January 2005 were extended new contracts. Plaintiffs' AUF ¶ 24; Defendants' SUF ¶ 49. Albeit as of July 1, 2005, there were no funds approved by the P.R. Department of Labor and Human Resources ("DHLR") for Law 52 jobs in the Municipality, on March 14, 2005 the Municipality through Questell, completed a Law 52 Proposal seeking funds from the DHLR, for the fiscal year commencing July 1, 2005 and terminating on June 30, 2006. Plaintiffs' AUF ¶ 50; Defendants' SUF ¶ 50. The contract for a new Law 52 proposal was signed between the Municipality and the DLHR on July 29, 2005, with a commencement date of July 19, 2005. Defendants' SUF ¶ 51; Plaintiffs' AUF ¶ 51. Thus as of June 30, 2005, Evelyn Rivas and Leslie Rentas' contract expiration date, the Law 52 proposal had been submitted, and was awaiting approval. Despite the foregoing, Rodríguez admits that during 2005 she did not request any advice from the DHLR regarding the continuing employment of Law 52 employees. Plaintiffs' AUF ¶ 22. Furthermore, the letters sent by Mayor Questell to the Law 52 employees did not indicate the reason why they were not being re-hired had to do with an impediment in Law 52. *Id.* at 23. Moreover, Angelo Pedroso, and Ravindranas Laboy's contracts were terminated on November 18, 2008, that is, after the approval of the 2005 Law 52 proposal. Thus, despite the alleged fiscal crisis, the Municipality continued to hire new employees throughout 2005, 2006, 2007, and 2008. *Id.* at 6. Furthermore, Plaintiffs note per Exhibit 8, cited at Defendants' SUF ¶ 11, the Municipality's ordinary expenses and public debt increased during the 2005–2006, and 2006–2007 fiscal years.

Additionally, according to the uncontested facts, the Municipality's federally funded Child Care Program's proposal, which had been submitted for approval by the end of July, 2005, was discarded because Questell closed the Child Care Center during the month of August, 2005. *Id.* at 41. However, the Child Care Program was reopened in September, 2005, and NPP employees were hired to work in the same capacity as the former employees. *Id.* Moreover, according to the testimony of PDP Santa Isabel Assemblyman Justo Torres Morales, as of May 2005 there were a total of 380 municipal employees and, as of October, 2008, there were one thousand seventy (1,070) employees at the municipality, the majority being of the PNP working under professional service contracts. *Id.* at 10. Also, Luz Yahaira Pabón, a PNP affiliate at that time, became the Labor Standards Technician, after Ana Cora was dismissed from said position. *Id.* at 37.

Lastly, pursuant to Rodriguez's deposition testimony, Ordinance 28's alternatives of reducing the work schedule, leave with-

out pay, retraining, reduction in salary/demotion, reassignment, re-training, for the municipal employees instead of dismissal was not offered to Plaintiffs not implemented by the Municipality. *Id.* at 12–21. Rodríguez·further stated that she does not know why said alternative was not implemented. She also admitted that the Municipality did not evaluate the employees' efficiency. *Id.* at 16.

▮ As a result, this Court finds that Plaintiffs have properly shown that material issues of fact remain as to whether Defendants' actions were motivated by the alleged financial crisis, or by Plaintiffs' political affiliation.

In summary, based on the uncontested facts, the remaining Plaintiffs have made out a *prima facie* case of political discrimination. Although Defendants proffer a legitimate nondiscriminatory reason for their actions, Plaintiffs have raised material issues of fact as to the validity of Defendants' defense. Considering that the defense of lack of discriminatory animus is a question of fact better left for a jury to decide, Defendants' request for summary judgment of the remaining Plaintiffs' political discrimination claims is **DENIED.** *See Orraca Figueroa v. Torres Torres,* 288 F.Supp.2d 176, 185 (D.P.R.2003).[18]

*Candida Jiménez and Cereida Muñoz's Political Harassment Claims*

In their motion for summary judgment, Defendants argue that Plaintiff's political harassment claims are time-barred.[19] Although most Plaintiffs concede to the dismissal of their political harassment claims, Cereida Muñoz and Candida Jiménez argue that their claims on this front are not time-barred. According to Defendants, Jiménez and Muñoz were not included as plaintiffs in the Complaint filed on June 22, 2006, and albeit they appear as plaintiffs in the October 11, 2006 Amended Complaint, they did not assert any claims therein. Defendants further aver that insofar as Jiménez and Muñoz stated their "short of dismissal claims" for the first time in the October 2007 Second Amended Complaint, any event that occurred prior to October 2006 is time-barred.

▮ Upon reviewing the record, this Court notes that, in the October 25, 2007 Second Amended Complaint, Jiménez and Muñoz set forth "short of dismissal" causes of action, arguing that they were deprived of their duties due to their political affiliation.[20] Under "short of dismissal" actions, plaintiffs must satisfy a two prong test, that is, they must show that the removal of their duties was motivated by their political affiliation, and that the challenged actions resulted in a work environment "unreasonably inferior" to the norm for the position. *Roman v. Delgado Altieri,* 390 F.Supp.2d 94, 104 (D.P.R. 2005). In analyzing the "unreasonably inferior" prong, courts shall determine

---

**18.** This Court notes that although Defendants assert that five of the career employees laid off on November 2005 were offered posts under Law 52 contracts that became vacant that month, and Plaintiff counters that only 3 were extended said offers, both parties fail to point out which Plaintiffs were offered Law 52 positions, and if they are currently working at the Municipality. Defendants' SUF ¶ 33. Thus controversy remains as to this issue.

**19.** They also posit that their claims insufficient under *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 562–563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). However, this Court denied the Municipality's motion to dismiss on these grounds because controversy remained as to Plaintiffs' claims date of accrual. This issue is now addressed under the summary judgment standard.

**20.** They are both are currently employed by the Municipality.

whether "the governments's actions are sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party." *Id.* (citing *Agosto–De–Feliciano v. Aponte–Roque,* 889 F.2d 1209, 1217 (1st Cir.1989)).

Since Section 1983 lacks an accompanying federal statute of limitations, courts have applied the state's statute of limitations for personal injury cases. *Gonzalez Garcia v. P.R. Elec. Power Auth.,* 214 F.Supp.2d 194, 199–200 (D.P.R.2002); *Rivera Torres v. Ortiz Velez,* 306 F.Supp.2d 76, 82 (D.P.R.2002). In Puerto Rico, a one-year statute of limitations governs personal injury actions. *See* 31 L.P.R.A. § 5298(2) (1991). Therefore, the one-year limitation period is applicable to Plaintiffs' Section 1983 claims. *Gonzalez Garcia,* 214 F.Supp.2d at 199–200. Said period accrues "when the plaintiff knew or had reason to know the injury." *Id.* at 200 (citing *Benitez–Pons v. P.R.,* 136 F.3d 54, 59 (1st Cir.1998)). In employment discrimination claims, "limitations period normally start to run when the employer's decision is made and communicated to the affected employee." *Id.* Therefore this Court must determine when Jiménez and Muñoz's claims' statute of limitations began.

### *Candida Jiménez*

Pursuant to the record, on March 16, 1990, Jiménez became a career employee at the Municipality. Plaintiffs' AUF ¶ 28. On August 10, 2006, Questell sent her a letter whereupon she was transferred from her position as Secretary 3 at the Human Resources Department to the Police Commissioner's Office, effective August 17, 2006. *Id.* at 30. In said letter, Jiménez was not informed of her right to request an informal hearing prior to the effective date of her transfer. *Id.* at 31. When Jiménez began to work at the Municipal Police Commissioner's Office, she was immediately stripped of her duties. *Id.* at 33. She complained to her supervisor (the Police Commissioner), and to Rodríguez as to her reduced duties at her current position at the Police Commissioner's Office. *Id.* at 34.

Thus pursuant to the above-mentioned facts, Jiménez learned about the alleged adverse employment action, that is, the deprivation of her duties, since the day she began to work at the Police Commissioner's office in August 2006.[21] However, the Second Amended Complaint was filed on October 25, 2007, well over a year after her transfer and, the alleged deprivation of her duties. Jiménez attempts to salvage her claims arguing that the claims raised in the October 2007 Second Amended Complaint relate back to the October 2006 Amended Complaint. However, upon reviewing the October 2006 Amended Complaint, this Court notes that Jiménez does not assert any claims of political harassment, or alleges that she was deprived of her duties. Jiménez merely appears in her capacity as a career employee. It cannot be determined, from the face of the October 2006 Amended Complaint, whether Jiménez was terminated or was still employed by the Municipality. All of the 2007 Second Amended Complaint allegations of politically motivated terminations are inapplicable to Jiménez, and Muñoz, since they were still employed by the Municipality. As a result, the political harass-

---

**21.** The record is devoid of additional information regarding the duties she performed prior to her transfer. Per Jiménez's deposition testimony, her duties at the Police Commissioner's office were reduced to preparing transmittal sheets. Additionally, although at Plaintiffs' AUF ¶ 29, they allege that Questell ordered Rodriguez to remove Jiménez's telephone and fax, page 20 cited in support thereof is missing from the record.

ment claims set forth in the Second Amended Complaint do not relate back to the October 2006 Amended Complaint, insofar as the claim asserted in the latter does not arise from the same conduct set forth in the former. *See* FED.R.CIV.P. 15(c)(2).

■■■■ Moreover, Jiménez has not shown that any additional discrete acts of political harassment occurred after August 2006. This district has held that a plaintiff's "alleged deprivation of duties ... [is] discrete in nature," and that it is "not actionable under the continuing violation theory." *Díaz–Ortiz v. Díaz–Rivera*, 611 F.Supp.2d 134, 142 (D.P.R.2009); *Rivera–Torres v. Ortiz–Velez*, 306 F.Supp.2d 76, 82 (D.P.R.2002). Since Jiménez alleges a deprivation of her duties upon her transfer, said case law is controlling here.[22] Therefore, Jiménez's claims of political harassment/ "short of dismissal" are time-barred, and as a result, are **DISMISSED with prejudice.**

### Cereida Muñoz's Political Harassment Claims

Per the record, Muñoz was known to Questell as a PDP follower and member. Plaintiffs' AUF ¶ 45. As pre-intervention officer for the Municipality, she received many contracts submitted for payment that did not have the invoices, particularly for non-professional services and suppliers. *Id.* at ¶ 46. Notwithstanding the lack of invoices, Vargas allowed their payment *Id.* As a result thereof, Muñoz sent a letter on July 12, 2005 to Finance Director Vargas, and Questell, stating that if she did not receive the needed documents—invoices— she would not pre-intervene any disburse-

ment voucher. *Id.* at 45 and 47. Because of Muñoz's refusal to pre-intervene and approve disbursement vouchers that were not accompanied by the required documents, Vargas addressed to Muñoz a series of memoranda in November 2005 stating the alleged appropriate procedure for the approval of the disbursement vouchers. *Id.* Due to the foregoing, Muñoz reported to the State Insurance Fund and the Pan American Hospital for psychological treatment. *Id.* Questell and Vargas took away Muñoz's, and other PDP followers employed in the Finance Department's, telephone extensions and/or phones, and did not allow them to use their cellular phones while at work. *Id.* Muñoz's workload was reduced as of January 31, 2008. *Id.* at 47 and 48.

Defendants argue that since, in the 2007 Second Amended Complaint, Muñoz alleges that she was subjected to political harassment after Questell became mayor in 2005, her claims are time-barred. Upon reviewing the record, this Court notes that per Plaintiffs' opposition, and the Second Amended Complaint, Muñoz alleges that her work situation became unreasonable and significantly inferior to the norm for her position after July 15, 2005. She further alleges that the November 2005 memos sent by Vargas adversely affected her health.

As in Jiménez's case, Muñoz does not assert any claims of political harassment, or allege that she was deprived of her duties in the October 2006 Amended Complaint. Muñoz also appears only in her capacity as a career employee. Since Questell became mayor in January 2005, and Muñoz's work condition was adversely

---

**22.** Even if the continuing violation doctrine applied, Jiménez failed to properly argue, and proffer evidence, showing that there is a continuing violation. In order to establish a continuing violation under Section 1983, "a plaintiff 'must allege that a discriminatory act occurred or that a discriminatory policy existed' within the period prescribed by the statute." *Gonzalez Garcia*, 214 F.Supp.2d at 202.

changed starting July 15, 2005, she knew about her injury at least as of July 15, 2005. Insofar as the Amended Complaint was filed in October 2006, and the Second Amended Complaint was filed in October 2007, Muñoz's political harassment claims are also time-barred. Even the November 2005 memos sent by Vargas are not actionable under either amended complaint. Thus Muñoz's political harassment/"short of dismissal" claims are time-barred, and her claims are also **DISMISSED with prejudice.**

### Career Employees' Procedural Due Process Claims

Per the uncontested facts, in the October 17, 2005 dismissal letters from Questell to the career Plaintiffs, none of them were apprised of their right to request an informal hearing prior to the effective date of their terminations. Plaintiffs' AUF ¶ 35. Additionally, no informal pre-termination hearings were afforded by the Municipality to any of these plaintiffs. *Id.* Notwithstanding, Defendants allege that upon dismissal under the 2005 Lay Off Plan, the career Plaintiffs were informed of their right to file an appeal before CASARH. According to Defendants, the foregoing uncontested fact, together with the *Hudson–Parratt* doctrine, bar the career Plaintiffs' due process claims. In support of this argument, they posit that due process violation claims, based on the unauthorized denial of pre-termination rights, fail when adequate post-deprivation remedies are provided to plaintiffs. In opposition, and based on the Supreme Court's holding in *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the career Plaintiffs allege that by failing to provide pre-termination hearings, Defendants violated their procedural due process rights. They also aver that Defendants failed to implement the five alternatives to dismissal set forth in Ordinance 28.

 In order "to establish a procedural due process claims under Section 1983, a plaintiff must allege that he was deprived of a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process." *Maymi,* 515 F.3d at 29. "Property interests are not created by the Constitution; 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *De Vélez v. Zayas,* 328 F.Supp.2d 202, 211 (D.P.R.2004) (citing *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

 Employees classified as "career" or "permanent" have vested property rights, and cannot be deprived of that right without due process of law. *Borges Colon v. Roman–Abreu,* 438 F.3d 1, 8 (1st Cir.2006); *Figueroa–Serrano v. Ramos–Alverio,* 221 F.3d 1, 5 (1st Cir.2000). At a minimum, career employees are entitled to "notice and a meaningful opportunity to respond" prior to termination. *Figueroa,* 221 F.3d at 5–6 (citations omitted); *Monfort–Rodriguez,* 599 F.Supp.2d at 168. At the pre-termination stage, due process requires that "[t]he tenured public employee [receive] oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ.,* 470 U.S. at 546, 105 S.Ct. 1487.

 This Court notes that, in invoking their procedural due process claims, the career Plaintiffs do not argue that the established state pre-termination procedures are deficient, but rather that Defendants deprived them of said rights because of their political affiliation. *Cronin v.*

*Town of Amesbury,* 81 F.3d 257, 260, n. 2 (1st Cir.1996). It is uncontested that the career Plaintiffs have vested property rights in their employment, and that Defendants did not provide them with a pre-termination hearing prior to their dismissals. However, despite Defendants' failure to provide Plaintiffs the procedure due prior to making the decision to terminate them, the career Plaintiffs cannot succeed on their procedural due process claim unless they can show that the state failed to provide them with an adequate post-deprivation remedy. *Id.* (citing *Lowe v. Scott,* 959 F.2d 323, 340–41 (1st Cir.1992) ("If a state provides adequate postdeprivation remedies—either by statute or through the common-law tort remedies available in its courts—no claim of a violation of procedural due process can be brought under § 1983 against the state officials whose random and unauthorized conduct caused the deprivation.").)

■ Under the *Hudson/Parratt* doctrine, "when a deprivation of a property interest is occasioned by random and unauthorized conduct by state officials, the Supreme Court has repeatedly emphasized that the due process inquiry is limited to the issue of the adequacy of the postdeprivation remedies provided by the state." *Hadfield v. McDonough,* 407 F.3d 11, 19 (1st Cir.2005); *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). As a result, public entities are protected from federal due process claims where the denial of process was caused by the negligent or intentional misapplication of state law by a government official. *Id.* In interpreting said doctrine, this Circuit has held that "a government official has committed a random and unauthorized act when he or she misapplies state law to deny an individual the process due under a correct

application of state law." *Hadfield,* 407 F.3d at 20. The underlying rationale behind this doctrine rests on the fact that a state cannot anticipate and control the random and unauthorized negligent or intentional conduct of its employees. *Hudson,* 468 U.S. at 533, 104 S.Ct. 3194. More so considering that "one bent on intentionally depriving a person of his property might well take affirmative steps to avoid signaling his intent." *Id.*

The *Hudson–Parratt* doctrine has been applied in the public employment context. Specifically, the First Circuit stated that a plaintiffs' procedural due process claims fail when "state law clearly provided for adequate notice and there was no suggestion that either by formal or informal means the state had authorized the giving of inadequate notice to persons who may be terminated, or that this was any form of regular practice," and proper post-deprivation remedies were provided. *Id.* at 20; *see also O'Neill v. Baker,* 210 F.3d 41, 42 (1st Cir.2000);

■ In the present case, Plaintiffs do not contest that they were informed about their right to appeal to CASARH, nor that state law establishes adequate pre-termination remedies for career employees. As a matter of fact, nineteen career employees laid off on November 2005 filed an appeal before CASARH. Defendants' SUF ¶ 32. Instead they argue that Defendants intentionally deprived them their right to a pre-termination hearing. As noted by this Circuit, "[i]n such situations, additional pre-deprivation safeguards would have little value in preventing an erroneous deprivation of the protected interest." *Mard v. Town of Amherst,* 350 F.3d 184, 193 (1st Cir.2003). That is, in all likelihood, a pre-termination hearing would not have afforded the career Plaintiffs the relief they sought. Thus considering the above-cited case law, and that adequate

post-deprivation remedies were afforded to Plaintiffs, their procedural due process claims fail. As to Jiménez and Muñoz, it is clear that "under Puerto Rico law, public employees have a property interest in their continued employment, not in the functions they perform." *De Vélez v. Zayas,* 328 F.Supp.2d 202, 212 (D.P.R.2004) (citations omitted). Any unreasonable deprivation of duties is properly addressed under their political discrimination claims. Therefore, the career Plaintiffs' procedural due process claims are **DISMISSED with prejudice.**

*Qualified Immunity*

■ Upon concluding that Plaintiff have pled a *prima facie* case of political discrimination, and that material issues of fact remain as to Defendants' motivation for the adverse employment actions, this Court cannot grant summary judgment on Defendants' qualified immunity defense at this time. *See Orraca Figueroa v. Torres Torres,* 288 F.Supp.2d 176, 187 (D.P.R. 2003).

## Conclusion

For the reasons stated above, Plaintiff's motion for summary judgment is **GRANTED in part and DENIED in part.** All Plaintiffs' procedural due process claims are **DISMISSED with prejudice.** Cereida Muñoz and Candida Jiménez's political harassment claims are **DISMISSED with prejudice.** All Co-Plaintiffs' political discrimination claims, except Angel L. Febus Rodríguez, Eugenio A. Reyes Alomar, Emma E. Espada Soto, Julio E. Espada Soto, Alma Jusino Guzman, Alma Mora Rivera, Farelyn Torres Colón, Karen I. Soldevila Muñoz, Luis A. Ithier Correa, Zasha Martínez Palermo, Ravindranas Laboy Cora, Angelita Rodríguez Colón, Héctor L. Rivera Briceno, Benoni Vega Suárez, Evelyn Leandry, Pablo Torres Rodríguez, Evelyn Rivas Rodriguez, Leslie Rentas Martinez, Ana Y. Cora Silva, Carlos Hernández Alvarado, Silverio Cruz Cintron, Angelo Pedroso Munera, and Lourdes Romero, are **DISMISSED with prejudice.**

**SO ORDERED.**

## OPINION and ORDER ON RECONSIDERATION

Pending before this Court is Plaintiffs' motion for reconsideration (Docket # 166), and the Municipality of Santa Isabel's Response (Docket # 168). Plaintiffs also filed a supplement to their motion, and the Municipality filed an opposition thereto. Docket ## 169 & 170. Upon reviewing the filings, and the applicable law, Plaintiffs' motion for reconsideration is **DENIED.**

### Factual Background

On June 22, 2006, Plaintiffs filed suit against Defendants under Section 1983, 42 U.S.C. § 1983, and Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141 & 5142.[1] In the complaint,[2] Plaintiffs, employees of the Municipality, allege that they were terminated from their positions due to their political affiliations with the Popular Democratic Party ("PDP"), after Questell, the candidate for the New Progressive Party ("NPP"), won the November 4, 2004 mayoral elections in the Municipality. After extensive discovery, the Municipality,

---

1. Plaintiffs' claims under Law 100, their substantive due process claims, and their request for punitive damages were dismissed by this Court. *See* Docket # 34. Also, Plaintiffs voluntarily dismissed their COBRA claims. *See* Dockets ## 38 and 148.

2. Plaintiffs filed the initial complaint on June 22, 2006. Docket # 4. Thereafter they filed an amended complaint (Docket # 5), and a second amended complaint (Docket # 39).

joined by the Municipality's Mayor, Enrique Questell–Alvarado ("Questell"), and the Human Resources Director, Natalie Rodriguez–Cardona (collectively "Defendants"), filed a motion for summary judgment alleging that: (1) Plaintiffs' political harassment claims were time-barred; (2) they failed to adequately state procedural due process claims; (3) Plaintiffs failed to establish a *prima facie* case for political discrimination; (4) there were legitimate non-discriminatory reasons for Plaintiffs' terminations; (5) Questell and Rodriguez were entitled to qualified immunity; and (6) Antonia Leon Alvarado, Juana Ortiz Perez, Jose Sanchez Rodriguez, Sonia Campos–Colon, and Luis Soto Santiago's claims were time-barred.

Plaintiffs opposed, arguing that they had set forth a *prima facie* case for political discrimination. They also asserted that material issues of fact remained as to Defendants' proffered reason for Plaintiffs' terminations/demotions, precluding summary judgment. Plaintiffs also posited that Questell and Rodriguez were not entitled to absolute immunity. Notwithstanding, Plaintiffs assented to voluntarily dismiss their political harassment claims, except for Candida Jiménez Moreno and Cereida Muñoz's claims on this issue, and to the dismissal of Antonia Leon Alvarado, Juana Ortiz Perez, Jose Sanchez Rodriguez, and Luis Soto Santiago's claims as time-barred.[3] Also, all transitory and Law 52 Plaintiffs asserted to voluntarily dismiss their due process claims.

In its September 18, 2009 Opinion and Order, this Court partially granted Defendants' motion for summary judgment. Docket # 154. As a result, all Plaintiffs' procedural due process claims and Cereida Muñoz and Candida Jiménez's political

harassment claims were dismissed with prejudice. Furthermore, all Co–Plaintiffs' political discrimination claims, except Angel L. Febus Rodríguez, Eugenio A. Reyes Alomar, Emma E. Espada Soto, Julio E. Espada Soto, Alma Jusino Guzman, Alma Mora Rivera, Farelyn Torres Colón, Karen I. Soldevila Muñoz, Luis A. Ithier Correa, Zasha Martínez Palermo, Ravindranas Laboy Cora, Angelita Rodríguez Colón, Héctor L. Rivera Briceno, Benoni Vega Suárez, Evelyn Leandry, Pablo Torres Rodríguez, Evelyn Rivas Rodriguez, Leslie Rentas Martinez, Ana Y. Cora Silva, Carlos Hernández Alvarado, Silverio Cruz Cintron, Angelo Pedroso Munera, and Lourdes Romero, were dismissed with prejudice.

On September 28, 2009, Plaintiffs filed the instant motion, requesting that this Court set aside its dismissal of co-plaintiffs' claims. In support of said request, Plaintiffs argue that they set forth sufficient circumstantial evidence that, when considered as a whole, shows that Mayor Questell knew the dismissed co-plaintiffs' political affiliation. Moreover, they contend that the career employees' due process rights were violated because they were not afforded pre-termination hearings. According to Plaintiffs, the record as a whole shows that their terminations were due to their political affiliation.

In opposition, Defendants aver that Plaintiffs failed to establish a prima facie case of political discrimination insofar as they failed to establish that the Mayor knew about their political affiliation. They further posit that Plaintiffs' circumstantial evidence regarding the alleged heated political atmosphere, the "jingle" played by the New Progressive Party, and the possi-

---

**3.** Sonia Campos–Colon claims were dismissed for failure to appear at her deposition. *See* Docket # 79.

bility that the Mayor knew some of the Plaintiffs' by face, or nicknames, is insufficient to show knowledge of political affiliation. Lastly, Defendants argue that Plaintiffs have not shown that there was a manifest error of law or newly discovered evidence which merits setting aside this Court's prior ruling.

### Standard of Review

■ FED.R.CIV.P. 59(e) allows a party, within ten (10) days of the entry of judgment, to file a motion seeking to alter or amend said judgment. The rule itself does not specify on what grounds the relief sought may be granted, and courts have ample discretion in deciding whether to grant or deny such a motion. *Venegas–Hernández v. Sonolux Records,* 370 F.3d 183, 190 (1st Cir.2004) (citations omitted). In exercising that discretion, courts must balance the need for giving finality to judgments with the need to render a just decision. *Id.* (citing *Edward H. Bohlin Co. v. Banning Co.,* 6 F.3d 350, 355 (5th Cir.1993)).

■ Despite the lack of specific guidance by the rule on that point, the First Circuit has stated that a Rule 59(e) motion "must either clearly establish a manifest error of law or must present newly discovered evidence." *F.D.I.C. v. World Univ., Inc.,* 978 F.2d 10, 16 (1st Cir.1992) (citing *Fed. Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986)). Rule 59(e) may not, however, be used to raise arguments that could and should have been presented before judgment was entered, nor to advance new legal theories. *Bogosian v. Woloohojian Realty Corp.,* 323 F.3d 55, 72 (1st Cir.2003).

### Applicable Law and Analysis

In their motion for reconsideration, Plaintiffs allege that based upon the direct and circumstantial evidence presented in this case, and considering that at the summary judgment stage, the record shall be examined in the light most favorable to the non-movant, this Court should have concluded that Defendants knew Plaintiffs' political affiliation, and that they were terminated as a result of the same. In support of this argument, Plaintiffs point to the following evidence: the heated political atmosphere in the Municipality, Questell's campaign jingle ("pa' fuera es que van!"), Questell's testimony that he could not discard knowing many of the plaintiffs by their faces or nicknames, Questell's alleged comments about Angel Febus and other employees, the HUD and Child Care Program PDP employees' dismissal despite the approval of their respective program's proposals, the Municipality's failure to implement alternate measures prior to dismissal, or follow seniority across the board,[4] the pretextual nature of the Lay Off plan, and the validity of the approval process of Ordinance 28 and 21.

In opposition, Defendants argue that Plaintiffs fail to establish a manifest error of law, or present newly discovered evidence. They further note that Plaintiffs' proffered evidence to show Defendants' knowledge about their political affiliation is entirely speculative, and does not pass the *prima facie* case muster. Moreover, Defendants point out that Plaintiffs' attempts to use Capo's expert report in order to establish Defendants' knowledge of their political affiliation has been rejected by this Court.

After reviewing the record, this Court finds that Plaintiffs' arguments are specu-

---

**4.** In their supplementary motion, Plaintiffs submit CPA Amanda Capo's expert report, in order to show that seniority was not followed across the board, and instead was implemented within each job classification. Docket # 169.

lative at best. Albeit at the summary judgment stage, all inferences must be drawn in favor of the non-movant, the First Circuit has also held that "[a]n inference is reasonable only if it can be drawn from the evidence without resort to speculation." *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 672 (1st Cir.1996) (citing *Frieze v. Boatmen's Bank of Belton,* 950 F.2d 538, 541 (8th Cir.1991)). As previously noted by this Court, in order to establish a *prima facie* case for political discrimination, plaintiff must first "make four showings": (1) that the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's opposing political affiliation; (3) there is a challenged employment action; and (4) there is sufficient direct or circumstantial evidence that political affiliation was a substantial or motivating factor in defendant's decision. *Peguero–Moronta v. Santiago,* 464 F.3d 29, 48 (1st Cir.2006) (internal citation and quotation omitted). Only when the plaintiff satisfies this initial burden, the burden then shifts to the defendant to show that "it would have taken the same action regardless of the plaintiff's political beliefs-commonly referred to as the *Mt. Healthy* defense." *Padilla v. Rodriguez,* 212 F.3d 69, 74 (1st Cir.2000); *Mt. Healthy v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (superseded on different grounds); *Carrasquillo v. Puerto Rico,* 494 F.3d 1, 4 (1st Cir.2007); *Torres–Martinez v. P.R. Dept. Of Corrections,* 485 F.3d 19, 23 (1st Cir.2007); *Rodriguez–Rios v. Cordero,* 138 F.3d 22 (1st Cir.1998). If the defendant makes such a showing, the plaintiff may attempt to discredit the tendered nondiscriminatory reason with either direct or circumstantial evidence. *Velez–Rivera v. Agosto–Alicea,* 437 F.3d 145, 153 (1st Cir. 2006) (citing *Mt. Healthy,* 429 U.S. at 286–87, 97 S.Ct. 568). Thus even in the summary judgment context, "plaintiffs, as the nonmovants, must show evidence sufficient for a factfinder to reasonably conclude that [Defendant's] decision to terminate was driven by a discriminatory animus." *Mulero–Rodriguez,* 98 F.3d at 673.

In determining the sufficiency of Plaintiffs' evidence, the First Circuit has held that a highly charged political atmosphere can only support an inference of discriminatory animus, when coupled with "the fact that plaintiffs and defendants are of competing political persuasions ..." *Rodriguez–Rios,* 138 F.3d at 24. Thus political discrimination claims always require "that defendants have knowledge of the plaintiffs['] political affiliation." *Martinez–Baez v. Rey–Hernandez,* 394 F.Supp.2d 428, 434 (D.P.R.2005); *Hatfield–Bermudez v. Aldanondo–Rivera,* 496 F.3d 51, 61–62 (1st Cir.2007). As a result, "[a] prima facie case is not made out when there is no evidence that an actor was even aware of the plaintiff's political affiliation." *Hatfield–Bermudez,* 496 F.3d at 61; *see also Gonzalez–De–Blasini v. Family Dep't.,* 377 F.3d 81, 85–86 (1st Cir.2004) (holding that the fact that plaintiff was a well-known supporter of the opposing party, had held previous trust positions under said party's administration, and that was allegedly demoted after they assumed power, was insufficient to show that defendants knew about her political affiliation, and that said affiliation was the motivating factor for her demotion); *Cosme–Rosado v. Serrano–Rodriguez,* 360 F.3d 42, 48 (1st Cir.2004) (finding that a PDP Mayor's statement that he intended to "rid the town of NPP activists" was not enough to show that political affiliation was motive for adverse employment action); *Acevedo–Díaz v. Aponte,* 1 F.3d 62, 69 (1st Cir.1993) (holding that the fact that plaintiffs were conspicuous targets for discriminatory employment action by defendants because they prominently supported a former may-

or is not enough to show motive); *Díaz–Ortiz v. Díaz–Rivera*, 611 F.Supp.2d 134, 144 (D.P.R.2009) (citations omitted) (granting a municipality defendant's motion for summary judgment, holding that "none of the plaintiffs, except [a specified few] offer[ed] evidence that [defendant] had first-hand knowledge of their affiliations" with the opposing party); *Roman v. Delgado–Altieri*, 390 F.Supp.2d 94, 102 (D.P.R.2005) (citing *Aviles–Martinez v. Monroig*, 963 F.2d 2, 5 (1st Cir.1992)). Therefore, "even when circumstantial evidence may be sufficient to support a finding of political discrimination, plaintiffs must still make a fact-specific showing that a causal connection exists between the adverse employment action and their political affiliation." *Díaz–Ortiz*, 611 F.Supp.2d at 144 (citations omitted); *see also Monfort–Rodriguez v. Rey–Hernandez*, 599 F.Supp.2d 127 (D.P.R.2008).

As held by this Court, in the present case, there is no controversy as to the fact that Plaintiffs and Defendants belong to opposing political affiliations, and that there is a challenged employment action. However, the parties disagreed about whether Defendants knew about Plaintiff's opposing political affiliation, and whether there was sufficient direct or circumstantial evidence that political affiliation was a substantial or motivating factor in Defendants' decision.

In finding that Defendants did not know the dismissed Plaintiffs' political affiliation, this Court noted that the fact that the plaintiffs were municipal employees under the previous administration, participated in political rallies, worked at electoral colleges, and were well-known supporter of the administration's political party does not constitute evidence of their political affiliation. *Hatfield–Bermudez*, 496 F.3d at 62; *see also Gonzalez–De–Blasini*, 377 F.3d at 85–86; *Roman*, 390 F.Supp.2d at

102–03 (holding that "a plaintiff cannot prove that the defendant had knowledge of his political affiliation merely through: testimony of having been seen, or, for that matter, met during routine campaign activity participation, having been visited by the now incumbent while said defendant was a candidate to the position he now holds, by having held a trust/confidential/policymaking position in the outgoing administration, by having political propaganda adhered to plaintiff's car and/or house, or through knowledge of third parties").

Albeit according to the uncontested facts, Questell admitted that he could not discard knowing many of the plaintiffs by their nicknames, since he may recognize them if he sees them in person, this does not equate knowledge of their political affiliations. Plaintiffs' AUF ¶¶ 7 and 25. On the other hand, when Questell admitted he knew the remaining Plaintiffs, he also stated that he knew their political affiliation. Defendant's SUF at 38 & 39.

Based on the foregoing, this Court finds once more that Plaintiffs have not shown that Defendants knew each Plaintiffs' political affiliation, since they did not generate " 'the specific facts necessary to take the asserted claim out of the realm of speculative, general allegations.' " *Gonzalez–De–Blasini*, 377 F.3d at 86. Plaintiffs' request that this Court finds that Questell knew the dismissed Plaintiffs' political affiliation because he may know their nicknames or may know them if he sees them in person. However, the proposition that this Court must conclude that Defendants knew their political affiliation based on the foregoing, and the factors set forth in their motion for reconsideration, requires this Court to make inferences based on mere speculations, and as such, is insufficient to satisfy the *prima facie* case standard. *See cf. Aponte–Santiago v. Lopez–Rivera*, 957

F.2d 40, 43 (1st Cir.1992) (finding that plaintiff's sworn statement that defendants knew his political affiliation is enough to satisfy the *prima facie* case requisite); *Rodriguez–Rios v. Cordero*, 138 F.3d 22, 24 (1st Cir.1998) (holding that the district court erred in granting summary judgment when the plaintiff proffered evidence showing that her PDP affiliation was widely known, and that defendants were aware of her political affiliation); *Montfort–Rodriguez v. Rey–Hernandez*, 504 F.3d 221, 225–226 (1st Cir.2007) (holding that although plaintiffs did not produce direct evidence that Rey was aware of their political affiliation, there was enough circumstantial evidence—Rey and the human resource personnel's deposition testimony—to render the case more circumstantial than speculative). The fact that there is a massive amount of Plaintiffs in this case does not preclude their obligation to set forth a *prima facie* case of political discrimination as any other suits of this nature.

Consequently, and as previously held by this Court in its Opinion and Order, if Defendants did not know Plaintiffs' political affiliation, said factor could not have been a substantial motivating factor for any adverse employment action. Since Plaintiffs have "not met the burden of showing that [their] political affiliation was a substantial or motivating factor for the challenged employment action[s]," Plaintiffs' request to set aside said ruling is denied. *Id.*

Lastly, this Court notes that Plaintiffs did not expressly address the dismissal of Candida Jiménez and Cereida Muñoz's political harassment claims. Also, they failed to properly argue why this Court should set aside the dismissal of their procedural due process claims. Specifically, Plaintiffs did not address the applicability of the *Hudson–Parratt* doctrine, and instead reiterated that the lack of pre-termination hearing violated their due process rights, and was motivated by their political affiliation. However, this issue was duly ruled upon by this Court, and Plaintiffs have not shown a manifest error of law or newly discovered evidence which merits reversal on this front.

### Conclusion

For the reasons stated above, Plaintiffs' motion for reconsideration is **DENIED**. The parties are reminded of the following deadlines: Joint Proposed Jury Instructions, Joint Proposed Voir Dire and Joint Proposed Verdict Forms due by **10/2/2009**, and the Amended Proposed Pretrial Order is due by **10/8/2009**. Moreover, the **Jury Trial** is set for **October 13, 2009 at 9:00 am,** and the **Final Pretrial and Settlement Conference** is set for **October 8, 2009** at 2:30 pm.

**IT IS SO ORDERED.**